## Commonwealth *vs.* Richard Wilcox.

No. 03-P-752.

Norfolk. February 9, 2004. - March 11, 2005.

Present: Cypher, Kantrowitz, & Berry, JJ.

Further appellate review granted, 444 Mass. 1103 (2005).

*Practice, Criminal,* Probation, Revocation of probation, Findings by judge. *Evidence,* Police report, Hearsay, Videotape, Prior conviction. *Due Process of Law,* Probation revocation.

This court concluded that a criminal defendant violated a probationary restriction of no contact by placing himself in a position of persistent and close proximity to the protected class of youths under sixteen, despite the fact that he did not actually touch or communicate directly with three young girls. [135-136]

At a probation revocation proceeding, the judge properly admitted in evidence a police report without making written findings, pursuant to rule 6(b) of the District Court Rules for Probation Violation Proceedings (2000), as to the trustworthiness and reliability of the hearsay witness statements set forth in that report and concerning whether there was good cause for not producing the witnesses, where the hearsay evidence was supplemented by other direct, nonhearsay pieces of incriminatory information, including the defendant's inculpatory statements, which fell squarely within the exception to the hearsay rule for admissions of a party defendant [136-137]; further, the defendant's corroborating nonhearsay inculpatory admissions, as well as other evidence, established the reliability of the witness statements in the police report [137-138].

There was no merit to a defendant's contentions in a probation revocation proceeding that his interview by the police, which was recorded in another State without his knowledge or consent, was in violation of G. L. c. 272, § 99, or that introduction of the videotape was unfairly prejudicial because it disclosed his prior convictions and sexual fantasies. [139]

At a probation revocation proceeding, the judge's statement on the record of his findings and reasons for revoking probation satisfied the requirements of due process and did not violate rule 7(c) of the District Court Rules for Probation Violation Proceedings (2000). [139-140]

There was no merit to a probationer's contention that he had not violated the probation service fee condition of his probation. [140]

Complaint received and sworn to in the Wrentham Division of the District Court Department on August 17, 2000.

A probation revocation hearing was held by *Robert E. Baylor*, J.

*Thomas J. Iovieno* for the defendant.

*Michael J. Markoff*, Assistant District Attorney, for the Commonwealth.

BERRY, J. The defendant advances a series of challenges to the revocation of his probation. The principal appellate issue, however, concerns a special condition of probation requiring that the defendant have "[n]o unsupervised contact with anyone under the age of 16."[1] The defendant asserts that it was not proved by the evidence proffered at the revocation hearing that he violated this condition simply because he followed young girls — driving his car close to one fourteen year old girl as she walked home from school and, thereafter, staring at that girl and two other young girls from within a small grocery store and, then, following them back to the home of one and repeatedly driving around the block. These acts, it is asserted, did not constitute "contact" in violation of the probationary condition because the defendant maintained a distance from the girls and did not speak, have other communication with, or touch any of the youths. We address and reject a similar contention in *Commonwealth* v. *Kendrick, post* 142 (2005), also issued this day. For the reasons set forth in *Kendrick,* we hold that a violation of a probationary no contact condition may be proved by acts in which the probationer, by deliberate design, intentionally and inconsistently with the probationary restriction, positions and interposes himself in a place wherein the probationer knew or reasonably should have known that a protected person would be present, and nonetheless proceeds intentionally to position himself in that critical space in close proximity to a protected class and maintains a looming presence, posing a real

---

[1] The defendant's other claims of error are that (1) a police report was improperly introduced because it contained unreliable hearsay statements; (2) his interview by the police was recorded without his knowledge or consent in violation of G. L. c. 272, § 99; (3) the judge failed to make written findings in accordance with rules 6(b) and 7(c) of the District Court Rules for Probation Violation Proceedings (2000); (4) the evidence was insufficient to show that the defendant violated the probationary condition requiring payment of probation service fees; and (5) the probationary restriction was unconstitutionally vague.

and present risk to the very protected class from which the probationary restriction was designed to insulate the defendant. See *Kendrick, infra* at 146-149.

1. *The evidentiary basis for the probation revocation.* The defendant pleaded guilty to four counts of making annoying telephone calls and two counts of accosting. (The record contains references to the criminal complaints and resulting convictions for the annoying call offenses being based upon the defendant randomly placing sexually laden telephone calls to minor girls.) A District Court judge sentenced the defendant to two years of probation, subject to the special restriction at issue prohibiting any unsupervised contact with anyone under sixteen years of age.[2,3]

The evidence at the probation revocation hearing concerning violation of the no contact condition may be summarized thusly. Officer Trafford of the Pawtucket, Rhode Island, police was directly involved in that stage of the investigation that led to the identification of the defendant as the individual who had prowled a Pawtucket neighborhood, following and surveilling three young girls. Trafford ran a registration check on a white Mitsubishi car bearing the license plate number provided to the police by witnesses who saw the defendant circling the neighborhood in the car. Trafford determined that the car was registered to a company in Attleboro, Massachusetts, and learned from a company official that the defendant, an employee, was using the white Mitsubishi car during the time in question.

The defendant was contacted and voluntarily agreed to be interviewed by Officer Trafford. At the revocation hearing, Trafford related the inculpatory statements made by the defendant during that interview, including the defendant's admission that he had followed the girls. In addition, a videotape recording of the interview was admitted as an exhibit, and we have reviewed it. See part 4, *infra.*

---

[2]The no contact term tracked a similar probationary condition imposed upon the defendant in sentences for five additional convictions. The sentence and probationary restrictions in this case were to run consecutively to those imposed for the other convictions.

[3]The order also required the defendant to obtain sex offender and alcohol evaluations and treatment, and to pay a monthly probation service fee.

The evidence at the revocation hearing also included a police report (authored by another Pawtucket police officer involved in the investigation), which summarized statements by the three girls and two women. (Neither the girls nor the women testified at the revocation hearing, a point addressed in part 3, *infra*.) The defendant's actions, as described in the witnesses' statements to the police, were as follows. One fourteen year old girl was walking home from summer school on the morning of July 18, 2002, when she noticed that a white sports car was following her. Later that evening, at approximately 9:30 P.M., the fourteen year old, now accompanied by two other young girls — one of whom was fifteen years old, and the other four years old — went to a local grocery store. While in the store, the girls saw a man watching them. The first girl identified the man as the same one who had been driving the white sports car that had followed her from school. The man followed the girls home in the white car. The man was described as tall and chubby, in his mid-thirties, with strawberry-blonde feathered hair, and clean shaven — a description that fit the defendant.

Between 10:00 P.M. and 12:00 midnight on the same night, two women (one of whom was the mother of one of the girls), sitting on the front steps of their house, saw a white Mitsubishi Eclipse automobile bearing Massachusetts registration 9929S repeatedly circling the neighborhood. (As previously noted, this license plate was linked to the defendant.) One of the women confronted the driver as he passed by the house, saying, "Stop driving by here, you have been doing it all night." The woman warned the driver that they were going to call the police. The man professed to be looking for a friend, and stated he was sorry and "did not mean anything by it." Then he drove away. As noted, these descriptive identifications, together with the license plate and the defendant's admissions in the interview with Officer Trafford, established that the defendant was the driver. Indeed, given this evidence, identification of the defendant was not a contested issue.

The District Court judge found that the defendant's acts were "predatory in nature" and that, in his statement to Officer Trafford, the defendant had, in effect, admitted that there had been contact by stating that he had been driving about and "check-

ing out" the girls involved. The judge found that these actions were not inadvertent, noting that when the defendant was confronted, he stopped his driving around the girls' neighborhood and left — a reflection of consciousness of guilt. The probation revocation issued, and the defendant was committed for twenty-four months.

2. *The challenge to the no contact violation.* For the reasons set forth in *Commonwealth* v. *Kendrick, infra,* we reject the defendant's contention that he did not violate the probationary restriction of no contact because he did not actually touch or communicate directly with the three young girls. In this case, as in *Kendrick,* the defendant placed himself in a position of persistent and close proximity to the protected class of youths under sixteen. "[A] violation of a probationary no contact order may be proved by acts, such as undertaken in this case, in which a probationer, by deliberate design and in conflict with the probationary restriction, intentionally places himself in a position where the probationer knew or reasonably should have known that a protected person would be present in a particular place, but nonetheless proceeds intentionally to position himself in that critical space in close proximity to that protected class." See *Kendrick, infra* at 148. Here, the defendant's intent was quite direct.[4] He followed the young girls with a persistence that bordered on stalking and came within such close proximity as to instill fear.[5]

On this point, *Commonwealth* v. *Crimmins,* 46 Mass. App. Ct. 489, 490 (1999), is instructive. In that case, while driving her car, a woman noticed the defendant in the rearview mirror driving in the car behind her. The defendant followed her car for approximately seven minutes. We found that the defendant's

---

[4]"[T]he Commonwealth is not required to prove that the defendant actually intended to violate the order, but only to prove that the act constituting the violation was voluntary." *Commonwealth* v. *Silva,* 431 Mass. 194, 200 (2000). On the issue of this element of proof, see generally *Commonwealth* v. *Kendrick, infra* at 148-149.

[5]The defendant's suggestion that the no contact order was unconstitutionally vague is meritless. "[I]f the language which is challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices, it is constitutionally adequate." *Commonwealth* v. *Power,* 420 Mass. 410, 421 (1995), quoting from *Commonwealth* v. *Adams,* 389 Mass. 265, 270 (1983).

actions violated a restraining order issued pursuant to G. L. c. 209A.[6] See also *Commonwealth* v. *Tate,* 34 Mass. App. Ct. 446, 449-450 (1993) (defendant's looking at victim from up the street violated "no contact" condition of probation).

3. *Admission of the police report.* The defendant claims that the police report should not have been considered because the judge failed to comply with rule 6(b) of the District Court Rules for Probation Violation Proceedings (2000), by failing to make written findings, both as to the trustworthiness and reliability of the hearsay witness statements set forth in the police report, and concerning whether there was good cause for not producing the witnesses. The defendant also challenges the reliability of the information in the report and claims he was wrongfully denied the right to confront the witnesses whose statements were summarized therein.

Rule 6(b) provides that, when the sufficiency of evidence in a case rests solely on hearsay, the judge is to make written findings concerning whether hearsay evidence is "substantially trustworthy and demonstrably reliable" and whether there is "good cause" for not calling the witnesses.[7] The transcript contains references by the judge indicating that he considered the question of good cause for not calling the young girls and other witnesses and also considered the reliability of their statements in the police report. However, because the judge's references to the considerations bearing on the good cause for

---

[6]As stated in *Commonwealth* v. *Kendrick, infra* at 146 n.3, "In informing the operative restrictions of a no contact probationary condition, our courts have looked to, and consulted the case law concerning violations of no contact orders issued under G. L. c. 209A and subject to criminal prosecutions under § 7 of that statute. See, e.g., *Commonwealth* v. *MacDonald,* 50 Mass. App. Ct. 220, 222 n.7 (2000), considering the definitions in *Commonwealth* v. *Butler,* 40 Mass. App. Ct. 906, 907 (1996), a case involving a no contact order under G. L. c. 209A."

[7]Rule 6(b) provides as follows:

"(b) Sufficiency of Evidence When Case Rests Solely on Hearsay. Where the sole evidence submitted to prove a violation of probation is hearsay, that evidence shall be sufficient only if the court finds in writing (1) that such evidence is substantially trustworthy and demonstrably reliable and (2), if the alleged violation is charged or uncharged criminal behavior, that the probation officer has good cause for proceeding without a witness with personal knowledge of the evidence presented."

accepting the police report and not requiring live testimony were passing and not anchored in any way to rule 6(b) written findings, we will assume that the requisites of the rule were not fully met. Even with that assumption, the defendant's claim is still unavailing. See note 9, *infra.*

The rule 6(b) requirement of written findings does not apply to this case because the revocation of probation was not based solely on hearsay evidence. "[A] judge who *relies wholly on hearsay* to revoke probation [must] find in writing that the hearsay evidence was 'substantially trustworthy and demonstrably reliable' " (emphasis supplied). *Commonwealth* v. *Ivers*, 56 Mass. App. Ct. 444, 445 (2002), quoting from rule 6(b). In this case, the hearsay evidence was supplemented by other direct, nonhearsay pieces of incriminatory information. This included the license plate evidence and Trafford's investigation establishing the defendant was the driver of the white car "trolling" the neighborhood and surveilling the girls (e.g., the matching physical description of the defendant and the connection to him via the white car and its license plate). The nonhearsay evidence also included the defendant's inculpatory statements to Officer Trafford, in which the defendant admitted that he was "checking the girls out," as he followed them around the block, and that "he knows he had a problem" and experienced "certain urges." These inculpatory admissions of a party defendant fall within an established, and firmly rooted, exception to the hearsay rule. "An admission in a criminal case is a statement by the accused, direct or implied, of facts pertinent to the issue." *Commonwealth* v. *DiMonte*, 427 Mass. 233, 243 (1998), quoting from *Commonwealth* v. *Lewin (No. 2)*, 407 Mass. 629, 631 (1990). See Proposed Mass.R.Evid. 801(d)(2).

Related to the just addressed hearsay challenge, the defendant also contests the reliability per se of the statements in the police report. This argument is similarly unavailing because the reliability of the statements was established by the defendant's corroborating nonhearsay inculpatory admissions, and the identification evidence and the license plate match — all of which served independently to bolster the reliability of the witness

statements in the police report.[8] "[E]vidence which would be admissible under standard evidentiary rules [here a party admission and direct identification of the defendant through the license plate] is presumptively reliable." *Commonwealth* v. *Janovich*, 55 Mass. App. Ct. 42, 44 (2002), quoting from *Commonwealth* v. *Durling*, 407 Mass. 108, 118 (1990).[9]

[8]On appeal, the defendant also challenges both the redaction of certain numbers in the police report which, the defendant says, marked the victims' ages, and the redaction of the victim's full names, leaving only initials. As there was no objection below challenging admission of the police report on these particular grounds, nor does the record reflect that the defendant sought the witnesses' full names, the claim, accordingly, is waived. However, even were we to reach these claims of error, they fail. First, the point concerning redaction of the age references is moot because Officer Trafford testified to the ages of the victims.

Second, with respect to redaction of the girls' full names in the police report, the defendant on appeal for the first time contends this violated his constitutional rights to confrontation. In *Commonwealth* v. *Durling*, 407 Mass. 108 (1990), the Supreme Judicial Court spoke to the more limited rights of confrontation that exist in probationary proceedings. Probation "[r]evocation hearings are not part of a criminal prosecution" and for that reason afford the probationer a lesser range of constitutional rights. *Id.* at 112. Given the "more limited confrontation rights . . . in the context of probationary hearings, the constitutional rights to confrontation and the related cross-examination rights are not absolute." *Commonwealth* v. *Janovich*, 55 Mass. App. Ct. 42, 49 (2002). Indeed, it is the presence of less direct confrontation rights that allows for the introduction of hearsay evidence in a probation revocation hearing. "[A] showing that the proffered evidence bears substantial indicia of reliability and is substantially trustworthy is a showing of good cause obviating the need for confrontation." *Commonwealth* v. *Durling*, *supra* at 118.

[9]The judge noted that several of the witnesses whose statements were incorporated in the police report were sixteen and under and lived out of State. This was an appropriate consideration in assessing good cause for not requiring the presence of these young girls at the revocation hearing, and in balancing the more limited rights of confrontation attending such proceedings against the reliability of the hearsay statements in the police report — which statements, as previously discussed, had strong indicia of reliability in light of the other independent corroborative evidence. See related discussion in note 8, *supra*, and accompanying text. As stated in *Durling*, "presenting a witness with personal knowledge is not always possible. Indeed, it is often unrealistic. . . . The burden of requiring police officers [and witnesses] to travel to other parts of the State [or to travel to Massachusetts from other States] for revocation hearings would fall heavily not only on the officers but on their local communities which would lose their services for a significant period of time [and would impose a burden on out-of-State witnesses, such as in this case]. . . . In addition, the burden of scheduling the hearing at a time convenient to the witnesses, the defendant, the court, and the attorneys would

4. *The videotaping challenge.* Following Officer Trafford's tracking of the defendant through the license plate, the defendant voluntarily agreed to come to the police station and be interviewed. The interview was recorded on videotape without the defendant's knowledge. The defendant contends that the interview videotape should not have been admitted in evidence because it was made without his knowledge and consent, in violation of G. L. c. 272, § 99, and also that introduction of the videotape was unfairly prejudicial because it disclosed his prior convictions and sexual fantasies. Neither contention has merit. The first contention is without legal footing, as the tape was recorded in Rhode Island. The defendant cites no authority for the proposition that G. L. c. 272, § 99, applies to recordings made outside of Massachusetts.

As to the second contention of unfair prejudice, we disagree that the background information concerning the prior convictions, both in the videotape and in the interview statements by the defendant as described in Officer Trafford's testimony, could not properly have been considered by the judge in connection with this probation revocation. The defendant's pattern of making annoying and sexually provocative telephone calls to young girls fell within the prior bad act doctrine, reflecting a course of actions in randomly seeking out young girls unknown to the defendant and engaging in inappropriate conduct. This was relevant to the events underlying the probation revocation hearing. Indeed, the other bad act evidence was material to the reasons underlying the imposition of the protective probationary condition in the first instance. But, we need not rest our resolution on this determination alone because the defendant's contention that the disclosure of prior criminal history led to unfair prejudice is belied by the record. In revoking probation, the judge stated he was not relying on this information relating to the background of the prior convictions, and made clear that his finding of a probation violation and the revocation were based on the conduct of the defendant in following the girls.

5. *The issue of written findings.* The defendant contends that

___

fall on the individual probation officers. Thus, there are often valid reasons for not presenting live witnesses." *Commonwealth* v. *Durling,* 407 Mass. at 117.

the judge failed to "make written findings of fact," pursuant to rule 7(c) of the District Court Rules for Probation Violation Proceedings.[10] In this case, the judge on the record stated his findings and reasons for revoking probation. That was sufficient. The requirement of a separate written statement of the evidence relied on and the reasons for revocation "is not an inflexible or invariably mandatory requirement and can be satisfied in other ways," such as the statement of specific findings set forth in this case. *Commonwealth* v. *Morse,* 50 Mass. App. Ct. 582, 592-593 (2000). Given the judge's recitation of findings on the record the defendant "had actual knowledge of the 'evidence relied on and reasons for revoking [probation or] parole,' and [could have] subsequently obtain[ ] a written copy in the form of a transcript. We hold that the requirements of due process were satisfied by this procedure." *Fay* v. *Commonwealth,* 379 Mass. 498, 504-505 (1980), quoting from *Gagnon* v. *Scarpelli,* 411 U.S. 778, 786 (1973).

6. *Failure to pay probation fee.* The defendant argues that he did not violate the probation service fee condition of his probation because, in a previous probationary period arising out of different criminal convictions, his probation officer allowed him to substitute attendance at Alcoholics Anonymous (AA) meetings for the probation fee. However, the probationary terms at issue in this appeal did not contain such an AA waiver. We reject the defendant's claim that the waiver was transferred over to the new probationary term at issue in this appeal, by virtue of the statement in the order that "all other probation terms" applied. The July 16, 2001, probation order states that the defendant must pay to probation a monthly fee of $50 for thirty-six months.

7. *Conclusion.* In reviewing the record underlying a probation revocation, we seek to determine "whether [the defendant]

[10]As previously noted, the judge's findings, set forth in the record, included findings that the defendant's actions were "predatory in nature" and that the "defendant clearly indicated there had been contact" and rejected the assertion that the contacts were inadvertent. In addition, the judge entered findings on the record concerning the defendant's evasive conduct after being confronted, ending his pattern of circulating about the neighborhood, and departing. This conduct, in our view, reflects consciousness of guilty actions.

received his minimal due process rights, or their functional equivalent; whether the record discloses sufficient reliable evidence to warrant the findings by the judge that [the defendant] had violated the specified conditions of his probation; and whether the basic due process goals, of providing 'fair treatment' to the probationer and an accurate basis for determining whether revocation was proper, were achieved." *Commonwealth* v. *Morse*, 50 Mass. App. Ct. at 594, quoting from *Commonwealth* v. *Durling*, 407 Mass. at 116. In this case, we determine that these standards were met, and we affirm.

*Order revoking probation and imposing sentence affirmed.*