The PEOPLE of the State Of Colorado, Plaintiff–Appellee,

v.

Jimmy Dale McINTIER, Defendant–Appellant.

No. 03CA2276.

Colorado Court of Appeals,
Div. II.

Dec. 1, 2005.

Certiorari Dismissed March 31, 2006.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

LOEB, J.

Defendant, Jimmy Dale McIntier, appeals from a judgment of conviction, entered after a trial to the court, on one count of retaliation against a witness, a class three felony. We affirm.

In 1999, defendant pleaded guilty to felony drug possession and was sentenced to five years in the Department of Corrections (DOC), plus mandatory parole. He was scheduled to be released on parole in late 2002. Defendant's preference was to finish serving his sentence in prison, because he was convinced he could not complete the three-year parole period without having his parole revoked and being reincarcerated, thereby losing certain prison privileges which he then possessed. Therefore, he sent a series of letters to the parole board requesting permission to serve out his term while incarcerated. He was dissatisfied with the responses he received from the parole board.

On November 19, 2002, defendant wrote a letter to the chief trial deputy district attorney who obtained the conviction against him for drug possession. Defendant's letter read in pertinent part:

Another result was you had to disclose the Confidential Informant [the witness's name]. Who by the way still lives in the same trailer in [a specified] Trailer Park there in Brighton .... My father died and I couldn't bury him .... Since my father passed on all I do is fantasize about violence. I fantasize I go buy a machete kick [the witness's] door in handcuff her and her husband duct tape their mouths. Make em watch while I cut thier little girls head off that's just the start of the fantasy. I further fantasize I cut her husbands dick and balls off shove them in his mouth then cut his head off. My fantasy gets really good with [the witness] I take a hammer break her back in pieces to where she is paralyzed, cut her eyeballs out heat grease to as hot as I can get it and dump it in her ears. Take anything worth any money I dial 911 on the way out cause I want her to live paralyzed, blind and deaf thinking about what I done to her family all because she made a living selling dope setting people up once in a while.... Eventually you are going to run for District Attorney, well unless I act out my fantasy and the press finds out you disclosed who the CI was and left her living in the same place. So enjoy the holidays. I'll be enjoying XMAS this year as you ... have no choice but to let me go December 18 and give me a ride to Adams County.

The confidential informant referred to in the letter had provided information to the police that led to defendant's arrest in the drug case.

A special prosecutor charged defendant by information with one count of retaliation against a witness under the applicable version of § 18–8–706, C.R.S.2005 (amended in 2003 with language not pertinent here), and with four habitual criminal counts. Defendant waived his right to a jury trial and testified at the trial to the court. The court found him guilty of retaliation against a witness and entered judgment on the conviction. This appeal followed.

As pertinent here, § 18–8–706(1) provides: An individual commits retaliation against a witness ... if such person uses a threat ..., which action is directed to or commit-

ted upon a witness ... to any crime, an individual whom the person believes has been or would have been called to testify as a witness ..., a member of the witness' family ..., an individual in close relationship to the witness ..., [or] an individual residing in the same household with the witness ... as retaliation or retribution against such witness ....

■ In *People v. Hickman*, 988 P.2d 628, 644 (Colo.1999), the supreme court, in interpreting § 18–8–706(1), held that, to prove retaliation against a witness by threat, the prosecution must prove (1) the defendant threatened or committed harmful or injurious conduct toward a person protected by the statute; (2) the defendant made a threat or engaged in the conduct because the defendant knew or believed that the victim of the threat or conduct was a member of the class of protected persons; and (3) the defendant intended the threat or conduct as retaliation or retribution for the defendant's perception of the victim's relationship to criminal proceedings.

## I.

Defendant contends that the information charging him with retaliation against a witness was insufficient to invoke the jurisdiction of the trial court because it omitted the requisite specific intent mens rea for the offense. We are not persuaded.

■ The sufficiency of a charge in an information is a question of law that we review de novo. *People v. Melillo*, 25 P.3d 769, 777 (Colo.2001).

■ An information is sufficient if it advises the defendant of the charge he or she is facing so that he or she can adequately defend himself or herself and be protected from further prosecution for the same offense. *People v. Melillo, supra*, 25 P.3d at 778; *People v. Moore*, 200 Colo. 481, 484, 615 P.2d 726, 728 (1980). When an information fails to charge a crime, the court acquires no jurisdiction. *People v. Moore, supra*, 200 Colo. at 485, 615 P.2d at 729. Crim. P. 7(b)(2) sets forth the requirements for determining whether an information is sufficient and thus invokes jurisdiction of the court. *People v.*

*Melillo, supra,* 25 P.3d at 777. Crim. P. 7(b)(2) provides:

> The information shall be deemed technically sufficient and correct if it can be understood therefrom:
>
> (I) That it is presented by the person authorized by law to prosecute the offense;
>
> (II) That the defendant is identified therein, either by name or by the defendant's patterned chemical structure of genetic information, or described as a person whose name is unknown to the informant;
>
> (III) That the offense was committed within the jurisdiction of the court, or is triable therein;
>
> (IV) That the offense charged is set forth with such degree of certainty that the court may pronounce judgment upon a conviction.

■ An information may be filed using the language of the statute defining the offense. *See* § 16–5–202(3), C.R.S.2005. The requirement that the information identify the essential elements of the crime charged is satisfied if the language in the charge tracks the statutory language. *People v. Melillo, supra,* 25 P.3d at 778.

■ Relying on *People v. Hickman, supra,* defendant argues that the information was insufficient to confer jurisdiction on the trial court because it did not expressly allege that he acted with specific intent. We disagree.

In *Hickman,* the supreme court held that § 18–8–706(1) is a specific intent offense and stated:

> [B]oth the terms "retribution" and "retaliation" by definition require intentional conduct. A person can act in a retributive or retaliatory fashion only if she has a conscious objective to do so. Thus, the statute by the plain meaning of its terms requires the defendant to have as her conscious objective ... the specific intent to retaliate or to seek retribution against a person protected by the statute because of that person's relationship to a criminal proceeding. Because the statute requires that the defendant act with a specifically

defined conscious objective, we infer the culpable mental state of "intentional" even though the legislature deleted the term from the statute.

*People v. Hickman, supra,* 988 P.2d at 644–45.

Here, it is conceded that the information tracked the language of § 18–8–706(1). Under *Hickman,* the language of the statute necessarily encompasses the essential mens rea element of the offense that the threat be made with a conscious objective to retaliate against a protected person. Accordingly, we conclude the offense in the information here was charged with such degree of certainty as to confer jurisdiction on the trial court and allow it to pronounce judgment on the conviction. *See* Crim. P. 7(b)(2); *People v. Melillo, supra.*

## II.

■ Defendant contends that the trial court erred in concluding that the evidence was sufficient to prove beyond a reasonable doubt that he was guilty of retaliating against a witness under § 18–8–706(1). We disagree.

■ When the sufficiency of the evidence is challenged on appeal, the reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999); *Kogan v. People,* 756 P.2d 945, 950 (Colo. 1988).

■ The prosecution must be given the benefit of every reasonable inference that might be fairly drawn from the evidence. Further, the determination of the credibility of the witnesses is solely within the province of the fact finder, and it is the fact finder's function in a criminal case to consider and determine what weight should be given to all parts of the evidence and to resolve conflicts, testimonial inconsistencies, and disputes in the evidence. An appellate court is not permitted to act as a thirteenth juror and set aside a verdict because it might have drawn a

different conclusion had it been the trier of fact. *See Kogan v. People, supra; People v. Martinez*, 36 P.3d 154, 163 (Colo.App.2001).

### A.

Defendant first asserts that the evidence was insufficient to prove that the letter to the deputy district attorney explicitly communicated a threat as opposed to a description of a fantasy. We disagree.

A threat is a statement of purpose or intent to cause injury or harm to the person, property, or rights of another, by the commission of an unlawful act. *See People v. Hickman, supra*, 988 P.2d at 637 (citing *People v. Hines*, 780 P.2d 556, 559 (Colo.1989)); *see also Schott v. People*, 174 Colo. 15, 482 P.2d 101 (1971). The critical inquiry is "whether the statements, viewed in the context in which they were spoken or written, constitute a 'true threat.'" *People v. Janousek*, 871 P.2d 1189, 1198 (Colo.1994)(Mullarkey, J., specially concurring). A "true threat" is not merely talk or jest, and is evaluated "by whether those who hear or read the threat reasonably consider that an actual threat has been made." *People v. Janousek, supra*, 871 P.2d at 1198; *see also United States v. Leaverton*, 835 F.2d 254, 257 (10th Cir.1987). The threat need not be direct. A threat may be contingent or conditional if the contingency itself remains in the control of the person making the threat. *People v. Hines, supra*. Whether a particular statement is a threat is a question of fact for the finder of fact. *See People v. Janousek, supra*.

Defendant argues that his letter was purely a fantasy rather than an expression of intent or statement of purpose to harm the witness and that, accordingly, there was insufficient evidence to prove he made a threat, as defined by *Hickman*. We are not persuaded.

The trial court found that the language in defendant's letter clearly constitutes a threat as defined in *Hickman* because "it's clearly a statement of a purpose to commit harm or injury to another person through unlawful acts." We conclude the evidence was sufficient to support this finding.

A reasonable person could have viewed defendant's letter as an actual threat, with intent to cause injury or harm. The letter gave specific details as to where the witness lived; said that defendant would be in that area soon and that he might choose to act on his fantasy; and described graphic acts of physical violence against the witness and her family. Defendant did not merely share his purported fantasy with a stranger, but rather, he sent it to the deputy district attorney who had prosecuted his drug case, causing him apprehension and concern. Although the threat may have been conditional, defendant controlled the contingency. The trial court found there was no other way to cast the language used in the letter than as a threat. We thus conclude the evidence was sufficient to prove that defendant made a threat.

### B.

Defendant next contends that the evidence was insufficient to prove that the threats in the letter were "directed to" or "committed upon" the witness, because the statute requires that the witness be the recipient or intended recipient of the threat and that, here, the recipient was the deputy district attorney. We disagree.

Whether § 18-8-706(1) requires a witness or victim physically to be a recipient of the threat is a question of law that we review de novo. *People v. Melillo, supra*.

A reviewing court should look first to the language of the statute, and the words and phrases therein should be given effect according to their plain and ordinary meaning. When a court construes a statute, it should read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all its parts. *People v. Andrews*, 871 P.2d 1199, 1201 (Colo.1994). In doing so, a court should not interpret a statute in ways that defeat the legislature's obvious intent, or render part of the statute either meaningless or absurd. *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.1996).

As pertinent here, § 18-8-706(1) provides that a person commits retaliation against a

witness when he or she uses a threat which is "directed to" a witness to any crime as retaliation or retribution against such witness.

In *Hickman*, the supreme court interpreted the "directed to" language of § 18–8–706(1) to mean that a threat must be "directed toward" or "made against" a person protected by the statute. *See People v. Hickman, supra*, 988 P.2d at 636, 640. Contrary to defendant's contention, nothing in the language of the statute or *Hickman* requires that the threat must be directly communicated to or received by the protected person. We agree with the People that defendant's reading of the statute, to encompass only those threats that a defendant directly communicates to a protected person, would create the absurd result that a person could avoid prosecution by employing indirect methods to threaten a protected person for the purpose of retribution or retaliation. *See People v. Andrews, supra.*

The trial court concluded that under *Hickman*, the prosecution satisfied its burden under the statute by proving that defendant directed the threat toward the witness and her family even though it was not directly delivered or communicated to her by defendant. We agree. The court specifically found that defendant directed his threat toward the witness and her family. Further, the record shows that, although defendant did not directly deliver the threatening letter to the witness, he knew and expected that the district attorney would make the witness aware of the threat. Defendant testified at trial that he knew the district attorney would act on the letter and would be obligated to protect the witness. The trial court specifically found that the only "reasonable inference that can be drawn from that is that [the witness], the confidential informant, is going to know about this threat." The court also found that the witness was protected by the statute, because she was a first-hand witness who was involved directly in the underlying transaction, and that defendant knew her identity and was aware that she was an informant against him. The record supports these findings.

Accordingly, we conclude there was sufficient evidence to prove that the threats made by defendant in the letter were made against or directed to the witness specifically named and identified in the letter.

## C.

Defendant also contends that the evidence was insufficient to prove that his conscious objective was to threaten the witness and her family, or that he intended the threat as retaliation or retribution for the witness's role in his drug case. We are not persuaded.

The statute does not require proof that defendant intentionally communicated the threat to the witness, but only that he made the threat with the specific intent to retaliate or to seek retribution for the witness's involvement in the prior criminal proceedings. *See People v. Hickman, supra*, 988 P.2d at 644–45.

The trial court found that defendant intended retaliation or retribution and that his claim that the letter was simply part of an attempt to stay in prison and not be paroled was incongruous, incredible, and at odds with his prior statements. The court found it inconsistent that defendant would complain about the government putting people in prison for nonviolent crimes as part of an effort to stay in prison for an even longer period of time, and specifically found that defendant's explanation for writing the letter in question was not credible. In the letter, defendant wrote, "because I want her [the witness] to live paralyzed, blind and deaf, thinking about what I done to her family . . . all because she made a living selling dope, setting people up once in a while." The court interpreted this statement as vengeful and retributive and found that the threat was clearly made with the intent to retaliate and seek retribution against the witness for her role as a confidential informant in his drug case. Thus, we conclude the evidence was sufficient to establish the intent element of the charge against defendant. *See Kogan v. People, supra.*

## III.

Defendant next asserts that § 18–8–706(1) is unconstitutionally vague and overbroad as applied to him. We disagree.

A statute is presumed to be constitutional, and the party challenging its validity has the burden of proving unconstitutionality beyond a reasonable doubt. *People v. Janousek, supra,* 871 P.2d at 1195.

### A.

Defendant argues that §.18–8–706(1) is overbroad as applied because his letter was protected political speech. Specifically, defendant asserts.he was attempting to criticize the correctional system for not rehabilitating offenders by showing that he had become a hateful and violent person, and that, accordingly, the letter was protected speech under the First Amendment. We are not persuaded.

In *Hickman,* the supreme court held that, with respect to threats, § 18–8–706(1) is not substantially overbroad on its face and that any protected political speech which is affected should be resolved on a case-by-case basis. *People v. Hickman, supra,* 988 P.2d at 635, 641. In so holding, the supreme court stated, "[T]hreats to kill or injure a witness in retaliation for the witness's testimony are not protected speech. Threats to injure a potential witness's family, made with the intent of discouraging testimony, are not protected speech." *People v. Hickman, supra,* 988 P.2d at 640–41. Whether a statement is a "true threat" or "political speech" is a question for the finder of fact. *See United States v. Leaverton, supra,* 835 F.2d at 257; *see also People v. Janousek, supra,* 871 P.2d at 1198 (Mullarkey, J., specially concurring)(an as applied challenge to overbreadth of a statute should be viewed as a sufficiency of the evidence claim).

Here, the trial court found that defendant's explanation of his intent and motivation for writing the letter was not credible. The court found that his other letters to the DOC and other government officials stood in stark contrast to the clearly articulated threats in the letter to the district attorney concerning the witness. Based on the language of the letter itself and defendant's lack of credibility, the court found the letter was not protected political speech, but was a threat made with the intent to retaliate or seek retribution against a protected person. Because there is ample evidence in the record to support the court's finding, we conclude that § 18–8–706(1) is not unconstitutionally overbroad as applied to defendant in this case.

### B.

Defendant also contends that, because § 18–8–706(1) does not expressly prohibit threats delivered to third-party recipients, the statute failed to provide him with adequate notice of the prohibited behavior and is thus unconstitutionally vague as applied. Again, we disagree.

Vague laws may offend due process because they fail to give fair notice of the conduct prohibited and do not supply adequate standards to those who apply them to prevent arbitrary and discriminatory enforcement. *People v. Baer,* 973 P.2d 1225, 1233 (Colo.1999). However, due process does not require mathematical exactitude in legislative draftsmanship. *People v. Perea,* 74 P.3d 326, 332 (Colo.App.2002). The inquiry is whether the law in question uses terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *People v. Wood,* 743 P.2d 422, 431 (Colo.1987). A law is unconstitutional only if it "is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *People v. Hickman, supra,* 988 P.2d at 643 (quoting *Bd. of Educ. v. Wilder,* 960 P.2d 695, 703 (Colo.1998)).

In *Hickman,* the supreme court held that § 18–8–706(1), as construed, provides adequate notice of the prohibited behavior and is not, on its face, unconstitutionally void for vagueness. *People v. Hickman, supra,* 988 P.2d at 643. The court stated:

The statute is sufficiently specific to provide the constitutionally required guidance to individuals seeking to comply with the law and to law enforcement officers applying the statute. We believe that our construction of the statute sufficiently delineates the type of behavior—threats of illegal action or harmful or injurious conduct in retaliation or retribution for an individual's status as one of the persons protected by the statute—for a person of normal intelligence to have fair notice of what acts are proscribed.

*People v. Hickman, supra,* 988 P.2d at 644 (footnote omitted).

 A statute is vague as applied if it does not, with sufficient clarity, prohibit the conduct against which it is to be enforced. A defendant may test a law for vagueness as applied only with respect to his or her particular conduct. *People v. Summitt,* 104 P.3d 232, 239 (Colo.App.2004)(*cert. granted* Jan. 10, 2005).

As discussed above, § 18–8–706(1) does not require that a protected person must actually receive the threat made against him or her, but only that the threat must be "directed to" such person. The supreme court in *Hickman* construed the phrase "directed to" to mean that a threat must be "directed toward" or "made against" a protected person with the intent to retaliate or seek retribution. *People v. Hickman, supra,* 988 P.2d at 636, 640.

Here, although defendant mailed the letter to the deputy district attorney, the trial court found that the letter constituted a threat directed to the witness; that defendant knew that the deputy district attorney would inform the witness of the threats in the letter; and that defendant's specific purpose in making the threats was to retaliate against the witness for her participation in his drug case. These findings are adequately supported by evidence in the record. In our view, a person of ordinary intelligence would understand that such conduct is proscribed under the statute, and, accordingly, we conclude that the statute is not unconstitutionally vague as applied to defendant.

The judgment is affirmed.

Judge ROTHENBERG and Judge DAILEY concur.