The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Daniel Lynn DEVORSS, Defendant–Appellant.

No. 07CA1296.

Colorado Court of Appeals, Div. II.

March 31, 2011.

---

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge LOEB.

Defendant, Daniel L. Devorss, appeals the district court's order revoking his probation. We affirm.

## I. Background and Procedural History

On September 25, 1998, the prosecution charged defendant with one count of sexual assault on a child, one count of sexual assault on a child by one in a position of trust, and one count of sexual assault on a child-pattern of sexual abuse, based upon allegations that defendant sexually assaulted his girlfriend's young daughter. The parties entered into a plea agreement, and on November 3, 1998, defendant pleaded guilty to one count of sexual assault on a child and one added count of sexual assault in the third degree (now, unlawful sexual contact). The district court sentenced defendant to a ninety-day jail term and eight years of probation for the first count and a concurrent one-year jail term for the second count.

In July 2001, approximately two and one-half years into defendant's probation period, a probation officer filed a complaint alleging that defendant violated a condition of his probation by failing to timely make a restitution payment. The complaint was withdrawn upon defendant's payment and pledge to remain current on subsequent payments.

In August 2002, a probation officer filed a second complaint against defendant. The officer alleged that defendant violated his probation by pleading guilty to one count of third degree assault in an unrelated case. The officer asked the court to revoke and reinstate defendant's probation and to sentence defendant to two days in county jail. After holding a hearing in which defendant admitted the probation violation, the court sentenced defendant in accordance with the officer's request.

Less than one year later, a third probation revocation complaint was filed against defendant. This time, the probation officer alleged multiple violations of probation by defendant, including failure to timely register as a sex offender, failure to make timely restitution payments, curfew violations, nightly call-in violations, and poor progress in his required sex offender treatment program. However, instead of seeking revocation of probation, the officer asked the court to modify defendant's probation sentence to include 120 days of electronic GPS monitoring. The court granted the request and left defendant's probation sentence in place.

In November 2004, a probation officer filed a fourth complaint against defendant, alleging that defendant violated his probation by testing positive for methamphetamine and by failing to abide by requirements of the sex offender treatment program. Defendant agreed to plead guilty to the drug test violation in exchange for the officer requesting revocation and reinstatement of probation, as opposed to revocation and a sentence to the Department of Corrections (DOC). At a hearing on April 19, 2005, the district court accepted defendant's plea. The court then sentenced him to five years of supervised probation, commencing that day. The court also required him to undergo substance abuse evaluation and treatment as recommended by the probation department.

In May 2006, approximately one year into defendant's renewed probation period of five years, defendant filed a motion for early

termination of his probation. The prosecution objected, and at a hearing, the court denied the motion and continued defendant's five-year probationary term.

As pertinent to this appeal, a probation officer filed a fifth complaint against defendant on August 22, 2006. The officer alleged that defendant violated the following two sex offender conditions of his probation: (1) the condition prohibiting contact with children under the age of eighteen years; and (2) the condition requiring the successful completion of a sex offender treatment program. According to the complaint, defendant violated the no contact condition by sitting at a restaurant table with a young boy and by later admitting to his supervising officer that he knew that the boy was under the age of eighteen. The complaint alleged defendant violated the other condition when he was terminated from his sex offender treatment program.

The court conducted a revocation hearing on January 24, 2007. At the hearing, the facts surrounding the incident at the restaurant were largely undisputed. Defendant testified that he and a co-worker went to the restaurant for a weekday lunch break. The co-worker suggested the restaurant because he was celebrating his birthday and had planned to meet his mother at the restaurant for the occasion. Upon their arrival, the co-worker spotted his mother in the buffet line, and he and defendant immediately joined her. Defendant also ran into a probation officer (who was not defendant's supervising officer, but who was familiar with his case) while he was in the buffet line. Defendant spoke with the officer briefly while he filled his plate with food and headed to the booth selected by the co-worker's mother.

Defendant testified that he did not notice a child seated in the booth until he set his plate down. According to defendant, the child was the co-worker's nephew and appeared to be between thirteen and fifteen years old. Defendant testified that he knew immediately upon seeing the child that he "needed to make a decision on what [he] could do to … be cordial and be polite and somehow remove [him]self from that table," but that he felt uncomfortable leaving the restaurant given

that it was the co-worker's birthday and that the mother was paying for the lunch. Therefore, defendant left his plate on the table and proceeded to ask the probation officer, who was at the restaurant by coincidence, for advice on how to handle the situation. The officer suggested that he switch seats with the co-worker, but that she could not advise him further because she was not his supervising officer. Defendant returned to the booth.

Upon his return, defendant chose to sit next to the child so as to avoid facing him across the table. He then left the table on a second occasion to call his support person because, according to his testimony, he continued to feel uncomfortable about the situation. The phone call lasted about thirteen minutes, and he returned to the table again.

Defendant testified that he did not look at the child, talk to the child, or physically touch the child at any time during the thirty-minute lunch. However, he sat next to the child in the booth for the remainder of the lunch. Defendant disclosed the entire incident to his supervising probation officer at their next meeting.

The court also heard testimony at the revocation hearing from defendant's direct supervising probation officer since 2004, a second probation officer assigned to defendant's case, the sex offender treatment provider working with defendant, and defendant's support person. Defendant's supervising officer testified that he personally reviewed all of the conditions of probation with defendant, including the no contact provision at issue here. After reviewing all of the testimony, the court found as follows:

> Condition number four requires that you not have contact with any child under the age of 18, including your own children, not attempt contact except under circumstances approved in advance and in writing by the probation officer in consultation with the supervision team.

> Contact includes correspondence, written or verbal, telephone contact, or any communication through a third party.

> The contact that has been described by all of the witnesses, including the defen-

dant in this case, was direct contact; basically sitting right next to the kid.

It was awkward. I understand why the defendant didn't want to appear to be rude, I understand why the defendant didn't want to tell this co-worker that he had only known a short period of time what was up, although after almost eight years, or almost nine years on probation, the defendant ought to be kind of getting used to having to do that in awkward situations, because it comes up now and then.

Other than that, the defendant appears to have done everything he should have, everything his treatment taught him to, everything his probation required of him....

Based on this finding of direct contact with a child less than eighteen years of age, the court concluded that defendant violated the no contact condition of his probation. The court concluded that he did not, however, violate the other condition alleged in the complaint pertaining to completion of the sex offender treatment program.

At a sentencing hearing held on May 23, 2007, the court revoked defendant's probation and sentenced him to eight years in the DOC and three years of mandatory parole. However, the court suspended the DOC sentence for five years on the condition that he serve six months in county jail and remain on supervised probation for the remainder of the five-year suspension. This appeal followed.

## II. Analysis

Defendant contends the no contact condition of his probation is unconstitutionally vague as applied to him. Specifically, he contends the written condition proscribing "contact with any child under the age of eighteen" lacked sufficient clarity to notify him that he would violate the condition by merely sitting next to a child in a restaurant booth, when it is undisputed that he did not look at, talk to, or physically touch the child. Accordingly, he contends the court violated his constitutional right to due process by revoking his probation and imposing the suspended sentence. We disagree.

## A. Mootness

Initially, we must address the People's argument that subsequent events have rendered this appeal moot.

An issue becomes moot when any relief granted by the court would not have a practical effect upon an existing controversy. *People v. McMurrey*, 39 P.3d 1221, 1223 (Colo.App.2001). Generally, an appellate court will decline to render an opinion on the merits of an appeal when events subsequent to the underlying litigation have rendered the issue moot. *Id.* (citing *People v. Black*, 915 P.2d 1257 (Colo.1996)). However, Colorado recognizes two exceptions to this general rule, and we will reach the merits of an otherwise moot appeal "if the matter is one 'capable of repetition, yet evading review'" or "if the matter involves a question of great public importance or an allegedly recurring constitutional violation." *Humphrey v. Sw. Dev. Co.*, 734 P.2d 637, 639 (Colo.1987) (quoting *Goedecke v. Dep't of Insts.*, 198 Colo. 407, 410 n. 5, 603 P.2d 123, 124 (1979), and *Zoning Bd. of Adjustment v. DeVilbiss*, 729 P.2d 353, 356 n. 4 (Colo.1986)); *see also Pipkin v. Brittain*, 713 P.2d 1358, 1359 (Colo.App. 1985)..

Subsequent to the revocation order that is the subject of this appeal, a probation officer filed a sixth complaint against defendant alleging multiple violations of his conditions of probation. The court held a revocation hearing and found that defendant had violated six separate conditions of his probation. The court then revoked the supervised probation that was imposed in May 2007 as a condition of defendant's suspended sentence and sentenced him to six years in the DOC. The court's order in that proceeding is the subject of a separate appeal pending before this court. *See People v. Devorss*, No. 08CA2691, 2011 WL 1168293 (Colo.App. Mar. 31, 2011) (not published pursuant to C.A.R. 35(f)).

The People urge us not to reach the merits of the instant appeal. They argue that, due to defendant's most recent sentence to the DOC, any relief granted in this appeal would have no practical effect on the controversy.

Given the interrelationship of the two appeals, we question whether this appeal is technically moot. In any event, defendant asserts a constitutional violation for which there is currently no guidance in our published case law. Further, the resolution of the issue presented by this appeal could affect probationers beyond defendant because the no contact conditions at issue here are regularly imposed as a condition of probation on sex offenders. Accordingly, we agree with defendant that this appeal fits the exception to the mootness doctrine for matters involving a question of great public importance or recurring constitutional violations, and we thus proceed to the merits. *See Humphrey,* 734 P.2d at 639.

### B. Void for Vagueness Law and Standard of Review

■ We first address and reject the People's threshold argument that we should decline to address defendant's as-applied constitutional challenge to the no contact condition of his probation because he did not raise this contention in the district court.

In *People v. Cagle,* 751 P.2d 614, 619 (Colo.1988), which involved a facial challenge to the constitutionality of a statute, the supreme court stated in dictum that "[i]t is axiomatic that this court will not consider constitutional issues raised for the first time on appeal." We recognize that the supreme court and prior divisions of this court have relied on this statement to decline to review not only facial challenges to the constitutionality of a statute, but other unpreserved claims of constitutional error. *See, e.g., Martinez v. People,* 244 P.3d 135, 139–40 (Colo.2010) (court of appeals should not have considered defendant's unpreserved argument that prosecutorial misconduct during closing argument violated his rights under the Colorado Constitution); *People v. McMurtry,* 122 P.3d 237, 241 (Colo.2005) (defendant may only raise claim of improper denial of constitutional speedy trial right on appeal if he or she first raises the claim in the trial court); *People v. Knott,* 83 P.3d 1147, 1148–49 (Colo.App.2003) (relying on *Cagle* to decline review of defendant's unpre-

served due process and double jeopardy claims); *People v. Kitsmiller,* 74 P.3d 376, 378 (Colo.App.2002) (relying on *Cagle* to decline review of defendant's unpreserved procedural due process claim).

Nevertheless, the supreme court and prior divisions of this court have frequently chosen to reach the merits of unpreserved constitutional claims. *See, e.g., Hinojos–Mendoza v. People,* 169 P.3d 662, 667 (Colo.2007) (reaching the merits of defendant's unpreserved facial and as-applied challenges to the constitutionality of a statute); *People v. Miller,* 113 P.3d 743, 749–50 (Colo.2005) (reaching the merits of defendant's unpreserved claim that jury instruction violated his due process rights); *People v. Stevenson,* 228 P.3d 161, 170–71 (Colo.App.2009) (reaching the merits of defendant's unpreserved claim of prosecutorial misconduct during closing arguments). Indeed, in *Hinojos–Mendoza,* the supreme court stated that it was choosing to "exercise [its] discretion to review these constitutional challenges, particularly in light of the fact that doing so will promote efficiency and judicial economy." *Hinojos–Mendoza,* 169 P.3d at 667 (citing *People v. Wiedemer,* 852 P.2d 424, 433 n. 9 (Colo.1993)); *see generally People v. Greer,* 262 P.3d 920, 934 (Colo.App. 2011) (J. Jones, J., specially concurring) (citing and discussing additional cases involving unpreserved constitutional claims).

Accordingly, we exercise our discretion to reach the merits of defendant's constitutional challenge to the no contact condition of his probation. In doing so, we emphasize that the trial court record is sufficiently developed so that we are able to properly serve our appellate function in reviewing defendant's as-applied constitutional challenge. *Cf. People v. Patrick,* 772 P.2d 98, 100 (Colo.1989) ("[W]e cannot determine the as-applied constitutionality of a statute based upon an incomplete record of the facts."); *People v. Veren,* 140 P.3d 131, 140 (Colo.App.2005) ("To support such [an as-applied] claim, it is imperative that the trial court make some factual record that indicates what causes the statute to be unconstitutional as applied.").

■ When a statute is challenged as unconstitutionally vague in violation of the Due Process Clauses of the United States

and Colorado Constitutions, the essential inquiry is whether the statute "forbids or requires the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess as to its meaning and differ as to its application." *People v. Gross*, 830 P.2d 933, 937 (Colo.1992) (quoting *People v. Becker*, 759 P.2d 26, 31 (Colo.1988)); *see also Bouie v. City of Columbia*, 378 U.S. 347, 351, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). This requirement of reasonable definiteness provides assurance that a penal statute gives fair warning of proscribed conduct so that persons may guide their actions accordingly. *Gross*, 830 P.2d at 937. However, due to the nature of language, due process does not require mathematical precision in legislative draftsmanship. *Id.* A law is unconstitutionally vague "only if it specifies no standard of conduct at all, and not if it requires a person to conform his or her conduct to an imprecise, but comprehensible normative standard." *People v. Perea*, 74 P.3d 326, 332 (Colo.App.2002). Thus, the supreme court in *People v. Garcia*, 197 Colo. 550, 554, 595 P.2d 228, 231 (1979), held that, in evaluating a void for vagueness challenge,

> a common term ... is to be given its generally accepted meaning ... as well as the benefit of commonsense understanding.
>
> . . . .
>
> ... [T]he legislature is not required to define readily comprehensible and everyday terms which it uses in statutes. The vagueness doctrine is not an exercise in semantics to emasculate legislation; rather, it is a pragmatic means to ensure fairness. Where fairness can be achieved by a commonsense reading of the statute, we will not adopt a hypertechnical construction to invalidate the provision.

■ A statute may be challenged as unconstitutionally void for vagueness either on its face or, as is the case here, as applied to particular conduct. *See People v. Shell*, 148 P.3d 162, 172–73 (Colo.2006). A statute is facially void for vagueness if it is incomprehensible in all of its applications. *Id.* at 172. A statute is vague as applied if it does not, with sufficient clarity, prohibit the conduct

against which it is to be enforced. *People v. McIntier*, 134 P.3d 467, 475 (Colo.App.2005).

A prior division of this court has held that the void for vagueness doctrine applies not only to statutes, but to conditions of probation as well. *People v. Firth*, 205 P.3d 445, 449 (Colo.App.2008). Accordingly, we review defendant's contention that the no contact condition at issue here is unconstitutionally vague as applied to him in accordance with the above standards. *Id.* We must assess whether the probation condition is sufficiently clear to prohibit the conduct against which it is being enforced. *See McIntier*, 134 P.3d at 475.

■■ As with void for vagueness challenges to statutes, defendant's challenge to the no contact probation condition presents a question of law that we review de novo. *See Zelenoy v. Colo. Dep't of Revenue*, 192 P.3d 538, 542 (Colo.App.2008). However, as noted above, because defendant failed to properly preserve his constitutional challenge in the trial court, we review only for plain error. *See* Crim. P. 52(b); *Miller*, 113 P.3d at 749–50 (plain error is error that is both obvious and substantial).

### C. No Contact Condition

■ Defendant contends that, because the no contact condition does not expressly prohibit him from sitting in close proximity to an underage child, the condition failed to provide him with adequate notice that his conduct at the restaurant was prohibited. Thus, he contends the condition is unconstitutionally vague as applied to him. We disagree.

The no contact condition provides in its entirety as follows:

> You shall have no contact with any child under the age of eighteen (18), including your own children, nor attempt contact except under circumstances approved in advance and in writing by the probation officer in consultation with the community supervision team. Contact includes correspondence, written or verbal, telephone contact, or any communication through a third party.

Because defendant does not dispute that he had actual notice of this probation condition, we confine our review to the terms of the condition.

In our view, the no contact condition is sufficiently clear to warn defendant that he is prohibited from sitting in close proximity to a child under the age of eighteen years, even where he does not make eye contact with the child, communicate with the child, or physically touch the child.

The parties have not cited, and we have not found, any published Colorado cases interpreting the no contact probation condition at issue here. However, courts from other jurisdictions have interpreted similar probation conditions.

For example, in *Commonwealth v. Kendrick*, 446 Mass. 72, 841 N.E.2d 1235 (2006), the Supreme Judicial Court of Massachusetts interpreted a no contact with children provision. There, the defendant attended an antique car show and remained in close proximity to underage children at the show, even though the defendant did not talk to or touch any of the children. *Id.* at 1239. The court held this conduct violated the probation condition prohibiting the defendant from having contact with children under sixteen years of age. In rejecting the defendant's void for vagueness challenge, the court reasoned as follows:

> The use of the words "no contact" in the defendant's probation condition, then, is reasonably understood to impose an obligation on the defendant to avoid encountering or engaging children in any way; to refrain from attendance at places where proximity to, and thus an encounter with, children is likely; and promptly to remove himself from such proximity if an encounter arises unexpectedly. The condition is not, as the defendant suggests, simply a requirement not to touch or speak to a child. "No contact" obviously includes such conduct, but also requires the defendant to avoid even the opportunity for such touching or direct communication.

*Id.*

Further, other courts have reached results similar to *Kendrick. See Commonwealth v. Wilcox*, 63 Mass.App.Ct. 131, 823 N.E.2d 808,

810 (2005) (holding that a violation of a probationary no contact condition may be proved by "acts in which the probationer, by deliberate design, intentionally and inconsistently with the [no contact provision], positions ... himself in a place wherein [he] knew or reasonably should have known that a protected person would be present"), *aff'd,* 446 Mass. 61, 841 N.E.2d 1240 (2006); *State v. Danaher,* 174 Vt. 591, 819 A.2d 691, 694–95 (2002) (upholding trial court's finding that the defendant placed himself in physical proximity to a victim in violation of the "no contact" provision of his probation, because it is "not unreasonable ... to expect a person to understand that proximity is contained within the ordinary meaning of contact"); *State v. Leggett,* 167 Vt. 438, 709 A.2d 491, 493 (1997) (no communication or physical contact necessary to support finding of a violation of a no contact with children condition of probation; intentional proximity is sufficient).

We are persuaded by the reasoning of these cases and find it applicable to the probation condition at issue here.

The plain language of the condition in this case prohibits all unapproved contact with children less than eighteen years old. Thus, it is a comprehensive prohibition against contact, the severity of which is underscored by the requirement that any contact must be approved in advance and in writing. We note that the condition prohibits even attempted contact. This language further stresses that the no contact condition applies to a wide range of conduct. It adequately warned defendant to avoid settings, such as the restaurant booth, where close proximity to a child could lead to prohibited contact.

We reject defendant's argument that the plain language of the condition only prohibits communication and physical interaction with a child. Defendant relies on the examples of contact that are included in the condition—specifically, written and verbal correspondence, telephone contact, and communication through a third party—to argue that the condition cannot be read broadly to prohibit merely sitting next to an underage child. We are not persuaded. There is no indica-

tion in the language of the condition that this list of examples is all inclusive. To the contrary, the list reiterates that the prohibited conduct can take a variety of forms, including both direct and indirect contact with a child. *See Kendrick,* 841 N.E.2d at 1239.

We also reject defendant's narrow reading of the condition in light of the purposes to be served by probation conditions. A court has the discretion to impose those conditions of probation that it deems reasonably necessary to ensure that the defendant will lead a law-abiding life and to assist him or her in doing so. *See* § 18–1.3–204(1), C.R.S.2010; *People v. Forsythe,* 43 P.3d 652, 654 (Colo.App.2001). In addition to specific conditions required by statute, a court may require a defendant to "[s]atisfy any other conditions reasonably related to the defendant's rehabilitation and the purposes of probation." § 18–1.3–204(2)(a)(XV), C.R.S.2010; *Forsythe,* 43 P.3d at 654. It is well established that conditions of probation serve the dual purposes of enhancing the reintegration of an offender into a responsible life style and affording society a measure of protection against recidivism. *People v. Ressin,* 620 P.2d 717, 719 (Colo. 1980). Thus, a no contact condition, as here, is reasonably related to the rehabilitation of a sex offender. By prohibiting unapproved contact with an underage child, a sex offender learns to avoid situations that may lead to inappropriate and unlawful conduct. At the same time, society is protected against the conduct that led to the probationary sentence in the first place.

We therefore agree with the People that defendant's narrow interpretation of the word "contact" in the no contact condition would frustrate the dual purposes served by probation. Rather, we conclude the word "contact" is a common term, and that, under the circumstances here, the condition must be read to prohibit his decision to sit adjacent to a child in a restaurant booth if the condition is to effectively educate and rehabilitate defendant while protecting society against recidivist behavior. *See Garcia,* 197 Colo. at 554, 595 P.2d at 231 (common terms should be given the benefit of commonsense understanding).

Defendant urges us to follow *Hunter v. State,* 883 N.E.2d 1161 (Ind.2008). In that case, the defendant was charged with violating a no contact condition very similar to the one at issue here by being present in his sister's mobile home for a few minutes when her underage children came home from school. The Supreme Court of Indiana agreed with the defendant that the condition could not be read to prohibit his momentary presence in the mobile home where he did not interact with the children and he immediately left upon their arrival. *Id.* at 1163–64.

We first note that *Hunter* is factually distinguishable from this case. Whereas in *Hunter* the defendant left the home to immediately terminate his proximity to underage children, defendant here did not leave the restaurant. Instead, he made the decision to sit next to the underage child on two separate occasions—first when he returned to the table after speaking with the probation officer, and second when he returned to the table after calling his support person. Although defendant testified that he was aware of his option to leave the restaurant and wait for his coworker outside, he did not do so. Further, in our view, the court's narrow interpretation of the no contact condition in *Hunter* detracts from the dual purposes served by probation conditions. *See Ressin,* 620 P.2d at 719.

Therefore, we conclude that the plain language of the no contact condition here prohibits defendant's conduct of sitting next to an underage child in a restaurant booth, even where defendant did not look at the child, talk to the child, or physically touch the child.

Our conclusion that the language of the condition sufficiently warns defendant of proscribed conduct, and thus survives his as-applied challenge, is confirmed by defendant's own testimony. Defendant testified that the child appeared to be thirteen to fifteen years old and, as such, that he "had no intentions to actually just sit down and start eating and think nothing was wrong." He testified that (1) he knew that he needed to remove himself from the table, (2) he did not want to switch seats with his co-worker because he would risk facing the child across the table, and (3) he sat on the edge of the

booth with his legs in the aisle because the situation was "nothing to feel comfortable about at all." This testimony, in addition to the testimony concerning defendant's conversations with the probation officer and his support person while he was in the restaurant, demonstrates that he was concerned about his proximity to the child. Taken together, the testimony demonstrates that defendant questioned his choice to sit next to the child and recognized that the entire situation presented a risk to his probation. Thus, the language of the condition sufficiently warned him to avoid mere proximity to a child. *Cf. Shell*, 148 P.3d at 173 (assessing the clarity of a statutory ban in light of a defendant's understanding and knowledge about her conduct).

Because we conclude that the no contact condition is sufficiently clear to prohibit the conduct against which it is being enforced—namely, deliberately and consciously sitting next to an underage child, even without communicating or physically interacting with the child—we further conclude that the condition is not unconstitutionally vague as applied to him. *See McIntier*, 134 P.3d at 475. Thus, we perceive no error in the court's revocation order and suspended sentence to the DOC based upon defendant's violation of probation.

### D. Incidental Contact Condition

Alternatively, defendant contends that the probation condition pertaining to incidental contact with underage children is unconstitutionally vague as applied to him. However, defendant was not charged with violating this condition of probation nor was such a violation found by the district court. We, therefore, decline to address this contention on appeal.

The order is affirmed.

Judge CASEBOLT and Judge FOX concur.