The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Renee Marie FORSYTHE,
Defendant–Appellant.

No. 99CA2472.

Colorado Court of Appeals,
Div. I.

Aug. 16, 2001.

Certiorari Granted March 18, 2002.

Ken Salazar, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Pamela A. Dayton, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Renee Marie Forsythe, appeals the district court's order denying her Crim. P. 35(c) motion to correct an illegal sentence. We affirm in part, reverse in part, and remand the case for further proceedings.

Defendant, who is developmentally disabled, lived with several of her children who ranged in age from approximately eighteen months to seven years. In June 1997, she left two of her sons, ages eighteen months and thirty months, unattended in a bathtub while she talked on the telephone. While thus unsupervised, the younger boy drowned. Defendant was charged with and pled guilty to one count of criminally negligent child abuse resulting in death, a class three felony, in violation of § 18–6–401(7)(a)(II), C.R.S. 2000.

In a separate proceeding in juvenile court, defendant's sons were placed in the custody of the Jefferson County Department of Human Services (DHS), and dependency and neglect proceedings were instituted. The district court sentenced defendant to ten years probation and, as pertinent here, ordered her "not to have custody of her children" and to have no unsupervised contact with children under sixteen without competent adult supervision. In addition, the court ordered that she serve a year in the county jail work release program.

Less than a year later, defendant gave birth to her fifth child (RAF). RAF was immediately placed in the custody of DHS, and a dependency and neglect proceeding was initiated in juvenile court. The juvenile court adjudicated RAF dependent and neglected, finding that "the probation orders in this case caused [RAF] as a matter of law to lack parental care through [defendant's] actions or omissions. See § 19–3–102(1)(b)."

Defendant then filed a motion in this case in the district court requesting clarification or modification of the terms of her probation so that she could have custody of and unsupervised contact with RAF when the juvenile court deemed it appropriate. Following a hearing, the district court denied the motion. Defendant did not appeal that ruling.

Thereafter, alleging that the juvenile court, rather than the district court, had original jurisdiction over RAF, defendant's juvenile court attorney filed a motion in this case requesting the district court to certify the question of RAF"S custody to the juvenile court. Defendant's attorney in her criminal case joined in that motion and expanded it to include allegations under Crim. P. 35(c) that defendant's sentence was illegal because it was contrary to statute and denied her constitutional rights. The motion asserted: (1) the district court was without jurisdiction to adjudicate the custody of defendant's children; and (2) the probation order, in effect, prohibited her from bearing or parenting any children during her primary childbearing years, thus imposing cruel and unusual punishment and depriving her of her constitutional rights to privacy, due process, and equal protection. The district court denied the motion, and this appeal followed.

I.

■ Defendant first contends the district court exceeded its statutory jurisdiction by ordering as a condition of probation that she not have custody of her children. We agree.

Section 19–1–104(1), C.R.S.2000, grants the juvenile court exclusive original jurisdiction to determine the legal custody of any child who is dependent or neglected. *L.A.G. v. People,* 912 P.2d 1385 (Colo.1996). The Colorado Children's Code, § 19–1–101, et seq., C.R.S.2000, delineates specific procedures that must be followed before the custody of such a child can be taken away from a parent. None of those procedures were followed in the district court. Thus, to the extent that the district court's conditions of probation purported to change the custody of defendant's children, they are void, and the portion of the district court's order denying defendant's Crim. P. 35(c) motion on this basis is reversed.

II.

Defendant also contends the district court abused its discretion and violated her constitutional right to due process by imposing the allegedly overly restrictive probation condi-

tion that she not have unsupervised contact with her children. We disagree.

█ A court has broad discretion in imposing a sentence. Thus, its decision will be accorded great deference, and only in exceptional cases will the appellate court substitute its judgment. *People v. Fuller*, 791 P.2d 702 (Colo.1990).

█ Because a parent has a fundamental liberty interest in the care, custody, and management of his or her child, the integrity of the family unit has found protection in the constitutional guarantee of due process. *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *People in Interest of M.H.*, 855 P.2d 15 (Colo.App.1992).

█ Generally, a court may grant probation subject to such conditions as, in its discretion, it deems reasonably necessary to ensure that the defendant will lead a law-abiding life and to assist him or her in doing so. Section 16–11–204(1), C.R.S.2000. In addition to a number of statutorily specified conditions, a court may require a defendant to "[s]atisfy any other conditions reasonably related to the defendant's rehabilitation and the purposes of probation." Section 16–11–204(2)(a)(XV), C.R.S.2000. However, when a restrictive condition of probation infringes upon a constitutionally protected right, the condition must also be the least restrictive available to accomplish the probation's legitimate purpose. *See People v. Bolt*, 984 P.2d 1181 (Colo.App.1999).

Conditions of probation similar to those here have been upheld where the children were victims, or potential victims, of the defendant's criminal conduct, particularly where the family relationship had provided the opportunity for the past criminal conduct. *Nitz v. State*, 745 P.2d 1379 (Alaska Ct.App. 1987); *People v. Wardlow*, 227 Cal.App.3d 360, 278 Cal.Rptr. 1 (1991); *People v. Hyatt*, 18 Cal.App.3d 618, 96 Cal.Rptr. 156 (1971); *Jano v. State*, 559 So.2d 1270 (Fla.Dist.Ct. App.1990); *Tuttle v. State*, 215 Ga.App. 396, 450 S.E.2d 863 (1994); *Hardman v. Hardman*, 185 Ga.App. 519, 364 S.E.2d 645 (1988), *overruled on other grounds by Pender v.*

*Witcher*, 196 Ga.App. 856, 397 S.E.2d 193 (1990); *State v. Credeur*, 328 So.2d 59 (La. 1976); *State v. Coreau*, 651 A.2d 319 (Me. 1994); *People v. McAllister*, 150 A.D.2d 913, 541 N.Y.S.2d 622 (1989); *State v. Whitchurch*, 155 Vt. 134, 577 A.2d 690 (1990). *See generally* Annot., *Propriety of Conditioning Probation on Defendant's Not Associating with Particular Person*, 99 A.L.R.3d 967 (1980).

Colorado appellate courts have not addressed the question whether a district court may, as a condition of probation, prohibit a defendant from having unsupervised contact with his or her children. However, other cases analyzing restrictive probation conditions are instructive.

In *People v. Brockelman*, 933 P.2d 1315 (Colo.1997), the supreme court outlined factors to consider when determining whether a condition of probation that contained a geographic restriction was valid. These factors include: (1) whether the restriction is reasonably related to the underlying offense; (2) whether the restriction is punitive to the point of being unrelated to rehabilitation; (3) whether the restriction is unduly severe and restrictive; (4) whether the defendant may petition the court to lift the restriction temporarily when necessary; and (5) whether less restrictive means are available.

In *People v. Bolt, supra*, a division of this court applied the *Brockelman* factors to determine whether a condition of probation restricting a defendant's freedom of association was reasonably related to the purposes of probation. In both *Brockelman* and *Bolt*, the restrictions were determined to be reasonable despite their ancillary effect on the defendant's freedom of movement.

█ We disagree with defendant's contention that application of the *Brockelman* factors here requires that the challenged condition be stricken. Instead, we conclude that such an analysis supports the district court's decision.

The record shows that defendant had a longstanding history of being unwilling or unable to provide safe and adequate care for her young children. Her oldest child, a daughter, had always lived with defendant's

mother. In contrast, defendant's three young sons remained in her sole care. While living with defendant, one son drank kerosene, and the victim here broke his arm, fell into a tub of scalding water, and was deprived of proper treatment after hospitalization for severe bronchitis when defendant failed to fill prescriptions and keep medical appointments. In addition, the three small boys were left unattended to play outside their apartment, and two of them were abandoned with a babysitter, who eventually called DHS the day after defendant failed to pick them up. DHS received numerous reports from friends, family, and neighbors expressing concern for the children's welfare. DHS itself had multiple contacts with defendant, warning her about the dangers of leaving her children unattended, and offering a variety of services to improve her parenting skills. Each time, defendant failed to accept available options, often becoming belligerent or hostile to those seeking to help her. Nevertheless, the children remained in her custody until the death here.

Again contrary to defendant's contention, the death of the victim while in her custody clearly placed in issue her general fitness as a sole caretaker of small children. Further, she previously had been offered numerous less severe care alternatives and consistently had refused to take advantage of them.

Even so, the conditions of defendant's probation allow for rehabilitation by permitting her unlimited supervised contact with her children. Such contact provides defendant the opportunity to remain law-abiding while receiving guidance in improving her parenting skills, without presenting a danger to her children. In addition, § 16–11–204(4), C.R.S. 2000, permits the court to alter or amend conditions of a defendant's probation for good cause. When appropriate, defendant is free to petition the court here to do so.

The court properly considered defendant's parenting history, the severity of her offense, and the necessity to assist her in leading a law-abiding life while affording society and her young children a measure of protection against recidivism. *See* § 16–11–204(1); *People v. Brockelman, supra.* The fact that the court also took into account appropriate

factors and imposed limiting conditions necessary to ensure the safety of defendant's children until she has demonstrated that they are no longer at risk when alone with her did not deprive her of her right to due process. *See People v. Brockelman, supra; People v. Bolt, supra.*

Because the condition requiring supervised contact did not violate defendant's right to due process or constitute an abuse of discretion, the court did not err in denying her motion to modify that condition. *See People v. Fuller, supra.*

The order is reversed to the extent it upholds the condition that defendant not have custody of her children, and the case is remanded for deletion of that condition from the appropriate documents. The order is affirmed in all other respects.

Judge DAVIDSON and Judge ROY concur.