The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Mark MANZANARES, Defendant–
Appellant.

No. 02CA1341.

Colorado Court of Appeals,
Div. I.

Oct. 9, 2003.

Certiorari Denied March 15, 2004.

Ken Salazar, Attorney General, Anthony J. Navarro, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Paul Grant, Englewood, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Mark Manzanares, appeals from the trial court's order revoking his deferred judgment and sentence, entering a judgment of conviction, and sentencing him for the crime of attempted sexual assault on a child. We affirm.

Defendant was charged here after a twelve-year-old girl reported waking up at night to find him moving his hand up the inside of her pants towards her vaginal area.

In November 1998, defendant entered a plea of guilty to the charge. Pursuant to a plea agreement, the trial court accepted defendant's guilty plea and granted him a deferred judgment for two years.

In June 1999, the probation department filed a complaint to revoke defendant's deferred judgment, alleging that he made poor progress in sex offender treatment. That complaint was withdrawn, however, in return for defendant's agreement to extend the period of deferred judgment until August 2001.

In August 2001, the probation department filed a second complaint to revoke the deferred sentence. This complaint alleged that defendant had violated terms of the deferred

judgment requiring him to: (1) attend, actively participate in, and complete sex offender treatment, and abide by the rules of his sex offender treatment program provider; (2) not purchase, possess, or consume alcoholic beverages; and (3) not have contact with any child under the age of eighteen, including his own children, unless approved in advance by the court.

Defendant unsuccessfully moved to dismiss the complaint or to withdraw or vacate his guilty plea, and the probation department filed a supplemental revocation complaint alleging that defendant had been unsuccessfully discharged from a second sex offender treatment program.

After the matter was continued several times in 2002, the trial court conducted a revocation hearing and then revoked defendant's deferred judgment. The court found that, in violation of the terms and conditions of deferred judgment, defendant had violated his contract with a sex offender treatment program by having at least ten unexcused absences, using alcohol, and having unsupervised contact with children.

Accordingly, the court entered judgment of conviction against defendant for the offense of attempted sexual assault on a child and sentenced him to six years of intensive supervised probation.

## I.

■ Defendant contends that the trial court erred in revoking his deferred judgment based on violations of sex offender treatment conditions because a sex-offender-specific evaluation was not conducted until 2002, just before his revocation hearing. We agree.

The statutory provisions governing sex-offender-specific evaluations are found in §§ 16–11.7–104 and 16–11.7–105, C.R.S.2002.

Section 16–11.7–104(1), C.R.S.2002, provides, in pertinent part:

On or after January 1, 1994, each sex offender who is to be considered for probation shall be required, as a part of the presentence or probation investigation required pursuant to section 16–11–102, to submit to an evaluation for treatment, an evaluation for risk, procedures required for monitoring of behavior to protect victims and potential victims, and an identification developed pursuant to section 16–11.7–103(4)(a).

Section 16–11.7–105(1), C.R.S.2002, provides in pertinent part:

Each sex offender sentenced by the court for an offense committed on or after January 1, 1994, shall be required, as a part of any sentence to probation, community corrections, or incarceration with the department of corrections, to undergo treatment to the extent appropriate to such offender based upon the recommendations of the evaluation and identification made pursuant to section 16–11.7–104, or based upon any subsequent recommendations by the department of corrections, the judicial department, the department of human services, or the division of criminal justice of the department of public safety, whichever is appropriate.

In *People v. Lenzini,* 986 P.2d 980, 983 (Colo.App.1999), a division of this court construed these provisions as requiring the court to order a sex-offender-specific evaluation to be conducted as part of the presentence report for sex offenders and to consider that evaluation in sentencing.

Following *Lenzini,* the same division held in *People v. Meidinger,* 987 P.2d 937, 938–39 (Colo.App.1999) that a court could not impose sex offender conditions as part of a sentence to probation without ordering the sex offender evaluation as required by § 16–11.7–104.

The prosecution correctly points out that, by their terms, §§ 16–11.7–104(1) and 16–11.7–105(1) appear to apply only when a presentence report is required for use in sentencing sex offenders. It argues, then, that the statutes are inapplicable here because an individual granted a deferred judgment is not subject to sentencing until he or she violates the conditions of the deferred judgment. We are not persuaded.

■ Courts should promote the spirit of a statute and not simply the letter of the law. *People in Interest of S.B.,* 742 P.2d 935, 938 (Colo.App.1987); *see Cabell v. Markham,* 148

F.2d 737, 739 (2d Cir.)(Hand, J.: "The defendants ... say that we are not free to depart from the literal meaning of the words, however transparent may be the resulting stultification of the scheme or plan as a whole.... [T]he decisions are legion in which [courts] have refused to be bound by the letter, when it frustrates the patent purpose of the whole statute."), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945); *Lobato v. Indus. Claim Appeals Office*, —— P.3d ——, —— (Colo. App. No. 02CA1145, June 5, 2003)("One guiding principle is that the interpretation of a statute may not cause an absurd result.").

In *People v. Lenzini, supra,* 986 P.2d at 983, the division recognized that the overriding goal of article 11.7 of title 16 was "to provide the state with a program of standardized procedures to deal with *all* sex offenders, as they are defined by § 16–11.7–102." This category specifically includes individuals, like defendant, who receive a deferred judgment for the offense of attempted sexual assault on a child. *See* § 16–11.7–102(2)(a)(I), (2)(b), (3)(d), (3)(u), C.R.S.2002.

■ The purpose of sex-offender-specific evaluations is to identify appropriate modes of sex offender treatment to curtail recidivistic behavior and protect the public. *See* §§ 16–11.7–101, 16–11.7–104(1), 16–11.7–105(1), C.R.S.2002. There is no question that an individual who has pleaded guilty to a sex offense and has been sentenced to probation would be required to undergo a sex-offender-specific evaluation. *See People v. Meidinger, supra,* 987 P.2d at 939.

■ A deferred judgment is akin to a sentence of probation. *People v. Slayton,* 878 P.2d 106, 107 (Colo.App.1994)(both probation and deferred sentencing are premised on defendants leading law-abiding lives). Like probation, a deferred judgment is a privilege, where the defendant is the primary beneficiary of a procedure that ultimately may result in dismissal of the charges against him or her. *People v. McPherson,* 897 P.2d 923, 925 (Colo.App.1995). Also, a person with a deferred judgment is supervised by the probation department and must comply with conditions similar to probation conditions. *See* § 18–1.3–102(1), (2), C.R.S.2002 (formerly codified at § 16–7–403).

We perceive no reason why a sex offender evaluation requirement should not apply to sex offender treatment conditions imposed in connection with a deferred judgment. Thus, in accord with the purposes of the statute, we construe §§ 16–11.7–104 and 16–11.7–105 to require such an evaluation.

Here, as a condition of his deferred judgment, the court required defendant to submit to a sex offender evaluation. However, the court did not order the probation department to conduct such an evaluation and the probation department did not independently seek to have an evaluation conducted until after the extended period of defendant's deferred judgment had expired.

The evaluation revealed that defendant had significant difficulty processing verbal information. The doctor who conducted the evaluation opined in a letter that defendant had been placed in sex offender programs "whose requirements may have been beyond his ability to fully comprehend."

In our view, the failure to timely conduct the required evaluation undermined the purpose of the sex offender conditions, rendering them unenforceable. Consequently, we conclude that the court erred in basing its revocation decision on a violation of sex offender treatment conditions.

## II.

■ Defendant also contends that his deferred judgment could not be revoked because of his use of alcohol. We agree.

In *People v. Cagle,* 780 P.2d 13, 14 (Colo. App.1989), a division of this court recognized that "a decision not to pursue revocation for a violation does not preclude subsequent revocation for a *later* violation" (emphasis added). This statement implies that a decision not to pursue revocation at a given time may bar subsequent revocation for an *earlier* violation. We agree, at least where, as here (1) the earlier decision not to pursue revocation is evidenced by a dismissal of a revocation complaint *after* the probation department knew of the purported violation and (2) the defendant has agreed to extend the period of

deferred judgment in reliance on the dismissal of the complaint.

Here, because the only evidence of defendant's alcohol use was known to the probation department when the first complaint was dismissed pursuant to the agreement with defendant, we conclude such evidence could not form a proper basis for later revoking defendant's deferred judgment.

### III.

On several grounds, defendant contends that the trial court erred in revoking his deferred judgment because of unsupervised contact with his children. We disagree.

### A.

■ Defendant asserts that this condition is unenforceable because it is materially different from those to which he agreed as part of his original plea bargain. We are not persuaded.

■ The interpretation of a plea agreement is a question of law subject to de novo review. "We interpret plea agreements pursuant to an objective standard, focusing on the meaning a reasonable person would have attached to the agreement under the circumstances," and recognizing that "terms of a plea agreement may be implied as well as expressed plainly on the agreement's face." *People v. Johnson,* 999 P.2d 825, 829 (Colo. 2000).

Here, the parties expressly agreed that defendant would comply not only with certain specified conditions but also with "any other conditions reasonably related to [his] rehabilitation and the purpose of this supervisory period, as ordered by the Court." Thus, the language of the plea agreement put defendant on notice that he could expect additional conditions of a certain type, namely those reasonably related to rehabilitation and the purpose of supervision.

In *People v. Forsythe,* 43 P.3d 652, 654 (Colo.App.2001), a division of this court held that probation conditions restricting contact with a defendant's children may be imposed, for the above-mentioned purposes, without necessarily infringing upon a parent's fundamental liberty interest in the care, custody, and management of his or her children. Specifically, the division noted that conditions prohibiting unsupervised contact with a defendant's children "have been upheld where the children were victims, or potential victims, of the defendant's criminal conduct, particularly where the family relationship had provided the opportunity for the past criminal conduct." *See People v. Forsythe, supra,* 43 P.3d at 654.

In *State v. Coreau,* 651 A.2d 319, 321–22 (Me.1994), the Maine Supreme Judicial Court distinguished conditions prohibiting unsupervised contact with a defendant's children from conditions prohibiting all contact with those children. In that case, the defendant had committed sexual crimes against an unrelated fourteen-year-old girl. Under those facts, the court stated that extending a general prohibition of contact with children under the age of sixteen to include *"unsupervised* contact with his own children bears a sufficient relationship to the crimes for which he has been convicted, reduces the risk of further criminality, and is a protection for the children." *State v. Coreau, supra,* 651 A.2d at 321. However, the court held that, absent evidence of abuse directed at, or a danger to, a defendant's own children, a condition prohibiting any type of contact with the children was unduly punitive and invalid, because it would have little to do with public safety or furthering the defendant's rehabilitation and reintegration into society.

In *State v. King,* 692 A.2d 1384, 1385 (Me. 1997), the same court upheld a condition of probation that did "not flatly prohibit contact between defendant and his children but permit[ted] contact with the approval of a probation officer." Such a condition, the court held, was "similar to a requirement of supervision" because it "permit[ted] contact when appropriate but protect[ed] the children."

Finding these authorities persuasive, we conclude that the condition of deferred judgment prohibiting defendant from contacting minors, including his own children, "except under circumstances approved in advance by the Court," prohibited only unsupervised contact with his children and, as such, was

reasonably related to rehabilitation and the purpose of supervision.

Consequently, that condition fell within, and was not imposed in excess of, the parties' reasonable expectations arising out of their plea bargain.

### B.

We reject defendant's related assertion that the providency court misled him about the extent of his obligations under the plea agreement. While the providency court indicated that defendant's case would be dismissed if he "stayed out of trouble," it did not limit the notion of staying out of trouble to simply avoiding convictions of other criminal offenses. As pertinent here, the court also advised defendant:

> [Y]ou'll be placed under the supervision of the probation department.... If you successfully complete that period of supervision, then the case against you will be dismissed and you will not have a conviction on your record.

> On the other hand, if you fail to successfully complete that period of supervision and should your deferred judgment be revoked *for any reason,* then you will be sentenced in accord with the plea that you entered today.

> . . . .

> You understand *if you violate any of the terms ·and conditions* of this deferred judgment, then you can be sentenced to any amount up to the maximum I've already told you about.

(Emphasis added.)

Thus, defendant was not misled about the existence of other conditions, and, pursuant to the terms of his agreement, he could be subject to additional conditions (including the no contact provision) reasonably related to rehabilitation and the purpose of supervision.

### C.

Defendant contends that the trial court improperly based its finding of a violation of this condition on inadmissible evidence. More specifically, he asserts that the evidence: (1) was illegally obtained because it arose out of attempts to comply with unenforceable sex offender conditions; and (2) was inadmissible hearsay. We are not persuaded.

Even if, as defendant argues, the evidence here was in some sense "illegally obtained," the exclusionary rules of evidence do not apply to deferred judgment revocation proceedings. *See* § 18–1.3–102(2), C.R.S. 2002 (in deferred judgment revocation hearings, "the procedural safeguards required in a revocation of probation hearing shall apply"); § 16–11–206(3), C.R.S.2002 (in probation revocation hearings, "[a]ny evidence having probative value shall be received regardless of its admissibility under the exclusionary rules of evidence"); *People v. Wilkerson,* 189 Colo. 448, 451, 541 P.2d 896, 898 (1975)(a defendant in a probation revocation proceeding "cannot complain of the admission of illegally seized evidence"); *see also Byrd v. People,* 58 P.3d 50, 56 (Colo. 2002)("the exclusionary rule is inapplicable in probation revocation hearings absent governmental activity that constitutes bad faith, harassment, gross impropriety, or another form of egregious misconduct").

Similarly, we reject defendant's assertion that the trial court's finding was erroneously based on inadmissible hearsay.

Proceedings to revoke deferred judgments are conducted according to the procedure used to revoke probation. *See* § 18–1.3–102(2); *People v. Allen,* 973 P.2d 620, 623 (Colo.1999). In revocation proceedings, a probationer is not entitled to the full range of constitutional guarantees available to one not yet convicted of crime. Because the court is not bound by strict rules of evidence at a revocation hearing, hearsay evidence is admissible. *People v. Moses,* 64 P.3d 904, 908 (Colo.App.2002).

A probationer has a due process right to confront and cross-examine witnesses. However, "the due process right of confrontation in revocations is not as extensive as that required by the Sixth Amendment in criminal trials." N.P. Cohen, *The Law of Probation and Parole* § 21:33, at 21–50 (2d ed.1999).

In *People v. Kelly,* 919 P.2d 866, 868 (Colo. App.1996), *People v. McCoy,* 939 P.2d 537, 540 (Colo.App.1997), and *People v. Moses, supra,* 64 P.3d at 908, divisions of this court recognized that where, as here, revocation is not sought on the basis of an alleged crime, the defendant's due process right is satisfied by subjecting the probation officer to cross-examination about proffered hearsay and affording the defendant an opportunity to present witnesses and testify in his or her own behalf.

Here, the evidence presented by the probation department consisted of (1) defendant's admission to a testifying probation officer and (2) the probation officer's recitation from probation department records of defendant's admissions to sex offender program polygraphers and another probation officer. In his reply brief, defendant did not attempt to refute the prosecution's assertions that the first category of evidence was admissible under CRE 801(d)(2) (nonhearsay admission by party-opponent) and the second category was admissible under CRE 803(6) (business record exception to the rule against hearsay). Further, because defendant cross-examined the probation officer and had the opportunity to present contradictory evidence, he was not denied due process by the admission of the evidence.

Thus, we conclude that the trial court did not err in admitting and relying upon this evidence to find a violation of this condition of deferred judgment.

### D.

■ Finally, we reject defendant's assertion that his deferred judgment could not be revoked solely upon the strength of his uncorroborated confessions or admissions.

■ Although a criminal defendant could not be convicted at trial solely on this type of evidence, *see People v. Burress,* 183 Colo. 146, 151, 515 P.2d 460, 463 (1973); *People v. Robson,* 80 P.3d 912, —— (Colo.App.2003), a hearing to revoke deferred judgment or probation is fundamentally different from a criminal trial. *See Byrd v. People, supra,* 58 P.3d at 55–57 (discussing probation revocation proceedings). And at least in cases

where, as here, revocation is not sought on the basis of an alleged criminal offense, we conclude that the confession corroboration requirement does not apply. *See also State v. Lay,* 26 Ariz.App. 64, 546 P.2d 41, 42 (1976)(probation revocation proceedings); *People v. Monette,* 25 Cal.App.4th 1572, 31 Cal.Rptr.2d 203, 204–05 (1994)(same); *People v. Woznick,* 278 Ill.App.3d 826, 215 Ill.Dec. 523, 663 N.E.2d 1037, 1038–39 (1996)(same); *State v. Generoso,* 156 N.J.Super. 540, 384 A.2d 189, 191 (Ct.App.Div.1978) (same); *State v. Schwarz,* 239 Wis.2d 443, 620 N.W.2d 414, 420–21 (Ct.App.2000)(same).

### IV.

We have determined that the trial court did not err in finding a violation of the condition prohibiting defendant from having unsupervised contact with minors, including his own children. Based on this one violation, the court was obliged to revoke defendant's deferred judgment. *See People v. Wilder,* 687 P.2d 451, 453 (Colo.1984). Thus, we affirm the trial court's order revoking the deferred judgment, entering judgment of conviction, and sentencing defendant, based on this one violation.

### V.

■ Defendant requests that we address the issue whether he is currently barred by § 16–5–402, C.R.S.2002, from pursuing a Crim. P. 35(c) motion to vacate his guilty plea. He filed in the trial court a motion to vacate, which he later indicated was premature because there was no judgment of conviction to vacate. The trial court disagreed, finding the motion was not premature and that it was time barred under § 16–5–402. Because, based on defendant's representations to us, the issue is likely to resurface in the trial court, we elect to address it.

In cases like defendant's, § 16–5–402(1), C.R.S.2002, ordinarily requires that a collateral attack on a conviction be made within three years of "the date of said conviction," which, the trial court found, was November 2, 1998, when defendant entered his guilty plea.

The limitations period of § 16–5–402 cannot commence until there is a right to pursue a collateral attack. In *People v. Anderson*, 703 P.2d 650, 652 (Colo.App.1985), a division of this court concluded that Crim. P. 35 review is not available until a deferred judgment is revoked and a judgment of conviction entered. Because the language of our statute and rule on postconviction remedies imply as much, *see* § 18–1–410, C.R.S.2002; Crim. P. 35(c), we agree with the decision in *Anderson*.

Accordingly, because the time for initiating a collateral attack did not occur here until May 2002, defendant is not yet barred by § 16–5–402 from moving to vacate his plea.

The order and judgment are affirmed.

Judge NEY and Judge LOEB concur.