The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Yanick KAZADI, Defendant–Appellant.

No. 09CA2640.

Colorado Court of Appeals,
Div. I.

March 3, 2011.

John W. Suthers, Attorney General, Emmy A. Langley, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

The Noble Law Firm, LLC, Antony M. Noble, Lakewood, Colorado, for Defendant–Appellant.

Opinion by Judge GABRIEL.

Defendant, Yanick Kazadi, a legal permanent resident who came to the United States from the Congo with his parents when he was thirteen years old, appeals the district court's order denying without a hearing his Crim. P. 35(c) motion for postconviction relief. In that motion, Kazadi, relying on both state and federal constitutional law, collaterally attacked his felony and misdemeanor drug possession convictions, arguing that he would not have pleaded guilty to those crimes had plea counsel informed him that by doing so he would subject himself to presumptive mandatory removal from the United States without the possibility of legal reentry.

We first conclude that the district court erred in summarily denying Kazadi's ineffective assistance of counsel challenge to his misdemeanor conviction. Accordingly, we reverse and remand for a hearing on that aspect of Kazadi's claim. We conclude, however, that Kazadi may not seek Crim. P. 35(c) review of his felony conviction, for which he received a deferred judgment and sentence. Accordingly, we vacate the district court's order denying that aspect of his motion.

## I. Background

Kazadi pleaded guilty to possession with intent to distribute marijuana in violation of former section 18–18–406(8)(b), Ch. 71, sec. 1, 1992 Colo. Sess. Laws 360–61, a felony. He also pleaded guilty to possession of a schedule V controlled substance (codeine), in violation of section 18–18–405(2)(a)(IV)(A), C.R.S. 2010, a misdemeanor. In their plea agreement, the parties stipulated to a deferred judgment and sentence on the felony but entry of judgment and a probationary sentence on the misdemeanor.

On the same day that the district court held a providency hearing to determine whether to accept Kazadi's guilty pleas and the parties' stipulation, Kazadi signed a Crim. P. 11 advisement form that warned

him of certain immigration consequences associated with pleading guilty:

> If I am not a citizen of the United States, this guilty plea may cause removal (formerly "deportation"), exclusion from admission to the United States or denial of naturalization. I further have been advised that *for certain felonies,* federal statutes could *require* removal and permanent exclusion. I have conferred with counsel regarding this and understand that I have a right to confer with immigration counsel. I understand that this court has no authority regarding immigration issues. No promises or representations have been made to me by the Court regarding immigration consequences other than the plain statements made in this paragraph.

(First emphasis added.)

The district court did not specifically discuss this paragraph with Kazadi during the providency hearing, although it asked Kazadi generally whether he had read and understood each paragraph in the advisement and whether he had indicated so by initialing each paragraph and by signing the advisement under the penalty of perjury. Kazadi responded affirmatively.

After discovering Kazadi's drug possession convictions, Immigration and Customs Enforcement instituted removal proceedings. In an apparent attempt to avert his removal, Kazadi filed a Crim. P. 35(c) motion, challenging his drug possession convictions on the ground that he received constitutionally ineffective assistance of counsel during the plea process. Specifically, Kazadi alleged that his counsel was ineffective in not advising him that by pleading guilty, he would become subject to presumptive mandatory removal and permanent exclusion from the United States. He also alleged that but for this ineffective assistance, he would not have pleaded guilty to either charge because he had no connections to or friends or family in the Congo, had intended to remain in the United States where he has resided since arriving with his parents as a child, and was engaged to a United States citizen with whom he had a then six-month-old child.

The district court denied Kazadi's motion without a hearing. As pertinent here, the court held that Kazadi was not prejudiced by the purported ineffectiveness of his counsel because he had read, understood, and signed the Crim. P. 11 advisement form, thereby acknowledging that "he was aware of the possible immigration consequences of pleading guilty."

Kazadi then filed a C.A.R. 21 petition for emergency relief in our supreme court. In that petition, he argued that a direct appeal would not afford him a "plain, speedy, and adequate remedy" because he would likely be removed from the United States before he could obtain any relief, and once removed, he would be unable to pursue the withdrawal of his guilty pleas. The court denied the petition over the objection of two justices. Kazadi then immediately filed this appeal.

## II. Misdemeanor Conviction

In his Crim. P. 35(c) motion, Kazadi sought to set aside both his misdemeanor and felony convictions. We first address the postconviction court's denial of Kazadi's motion as it pertained to the misdemeanor count. Kazadi asserts that he sufficiently pleaded facts to establish that his plea counsel was constitutionally ineffective in not advising him that by pleading guilty, he would subject himself to presumptive mandatory removal and permanent exclusion from the United States. Thus, he contends that the district court erred in denying his motion without a hearing. We agree.

We review de novo the portion of the district court's order summarily denying Kazadi's collateral attack on his misdemeanor conviction. *People v. Long,* 126 P.3d 284, 286 (Colo.App.2005). A district court may deny a Crim. P. 35(c) motion without an evidentiary hearing "only where the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief." *Ardolino v. People,* 69 P.3d 73, 77 (Colo.2003).

To determine whether a defendant received ineffective assistance during the plea process in violation of his right to counsel under either the United States or Colorado Constitution, we apply the two-prong test set

forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hill v. Lockhart,* 474 U.S. 52, 57–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (applying *Strickland* in the guilty plea context to a claim of ineffective assistance under the Sixth Amendment); *People v. Pozo,* 746 P.2d 523, 525–26 (Colo. 1987) (same but under the Colorado Constitution). Specifically, in the plea context, a defendant must show (1) counsel's representation fell below an objective standard of reasonableness and (2) a reasonable probability exists that but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 57–59, 106 S.Ct. 366. We address each prong in turn.

A. Deficient Performance

After Kazadi pleaded guilty, the United States Supreme Court decided *Padilla v. Kentucky,* — U.S. —, —, 130 S.Ct. 1473, 1478, 176 L.Ed.2d 284 (2010), which addressed "whether, as a matter of federal law, Padilla's counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his removal from this country." Focusing solely on *Strickland*'s first prong, the Court observed, "The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at —, 130 S.Ct. at 1482. Thus, the Court held that when the terms of the relevant immigration statute are "succinct, clear, and explicit" in defining the removal consequences associated with a particular conviction, counsel must give "correct advice." *Id.* at —, 130 S.Ct. at 1483. Conversely, when the law is not succinct and straightforward, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.*

Applying those principles to the case before it, the Supreme Court held that Padilla had sufficiently alleged that his counsel was ineffective by providing incorrect advice to him regarding the removal consequences of his pleading guilty to transporting a large amount of marijuana. *Id.* The Court observed that counsel could easily have determined from the text of the relevant immigration statute, 8 U.S.C. § 1227(a)(2)(B)(i), that Padilla's plea would make him eligible for removal. *Id.* Thus, counsel's failure to advise Padilla correctly of those consequences was deficient.

The parties debate whether *Padilla* established a new rule governing ineffective assistance of counsel claims in cases like this, and, thus, whether the Court's holding in *Padilla* should apply retroactively to this case. Although the majority of federal courts to have addressed this issue appear to have held that *Padilla* did not announce a new rule, there are also a number of cases holding to the contrary. *Compare, e.g., Luna v. United States,* No. 10CV1659–JLS–POR, 2010 WL 4868062, at *3–4 (S.D.Cal. Nov.23, 2010) (unpublished order) (holding that *Padilla* does not evince a new rule and thus may be applied retroactively), *with Doan v. United States,* 760 F.Supp.2d 602, 604–06, No. 1:06cr463, 2011 WL 116811, at *2–3 (E.D.Va. Jan.4, 2011) (holding that *Padilla* announced a new rule and declining to apply it retroactively). We, however, need not decide that issue here, because even if *Padilla* announced a new rule under federal law, Colorado law, under which Kazadi is also proceeding, has long recognized the very duties that the Supreme Court discussed in *Padilla.* Specifically, in *Pozo,* 746 P.2d at 529, our supreme court made clear that attorneys practicing in Colorado who knew or had sufficient information to form a reasonable belief that their client was an alien had a duty to research relevant immigration law. This duty, the court said, stems "from the … fundamental principle that attorneys must inform themselves of material legal principles that may significantly impact the particular circumstances of their clients." *Id.* Moreover, the court noted that, in cases involving alien criminal defendants, "thorough knowledge of fundamental principles of deportation law may have significant impact on a client's decisions concerning plea negotiations and defense strategies." *Id.* Accordingly, the court remanded the case to determine, in light of the foregoing principles, whether counsel's failure to advise Pozo of the immigration consequences of his plea constituted

constitutionally ineffective assistance of counsel. *Id.* at 529–30.

In our view, the Supreme Court in *Padilla* reached the same conclusion that our supreme court had reached in *Pozo* some twenty-three years earlier. Certainly, *Padilla* cannot be read as somehow lessening counsel's obligations under *Pozo.* Accordingly, the principles set forth in *Pozo* and *Padilla* apply here.

■ Turning then to the facts of this case, we conclude that Kazadi has sufficiently alleged that his counsel's performance was deficient. Specifically, Kazadi alleged that his counsel knew or had sufficient information to know that he was an alien because (1) discovery indicated that he was born in the Congo and was not a citizen of the United States, (2) he told his counsel that he and his family came from the Congo when he was a child, and (3) he has a foreign name and speaks with a foreign accent. If true, these allegations suffice to show that his counsel knew or had enough information to know of Kazadi's alien status, thus triggering a duty to investigate relevant immigration law and to advise accordingly. *See id.* According to Kazadi, however, his counsel did not conduct the necessary research and did not advise him that his misdemeanor conviction would, in fact, subject him to presumptive mandatory deportation under 8 U.S.C. § 1227(a)(2)(B) and permanent exclusion from the United States.

Because these allegations, if true, establish deficient performance by plea counsel, we must proceed to determine whether Kazadi has sufficiently alleged prejudice. *Cf. Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.").

### B. Prejudice

Kazadi contends that he has alleged facts that, if true, establish prejudice. Specifically, he points to his allegation that if counsel had informed him of the specific immigration consequences of his guilty plea, he would not have pleaded guilty but rather would have proceeded to trial or negotiated a disposition that would not have subjected him to presumptive mandatory removal. To conclude otherwise would be "inconceivable," he alleged, because he had no connections to or friends or family in the Congo, had intended to remain in the United States where he has resided since arriving with his parents as a child, and was engaged to a United States citizen with whom he had a then six-month-old baby.

Notwithstanding these allegations, the district court held, as a matter of law, that Kazadi did not suffer any prejudice because the record showed that he was "fully advised [through the form Crim. P. 11 advisement and the court's general colloquy regarding Kazadi's understanding of the advisement] of the immigration consequences of pleading guilty ... and that federal statutes could require removal and permanent exclusion." The court's holding presumes that the Crim. P. 11 advisement adequately apprised Kazadi of the immigration consequences of his plea, and therefore, Kazadi could not establish prejudice. We agree with Kazadi that the district court's summary determination based on this premise was erroneous and that he is entitled to a hearing.

■ As noted above, plea counsel have a duty to research relevant immigration law for their alien clients, and when the law is clear, they must advise their clients correctly regarding the immigration consequences of their guilty pleas. *Padilla,* — U.S. at —, 130 S.Ct. at 1483; *Pozo,* 746 P.2d at 529. Here, even limited research would have disclosed that Kazadi's guilty plea would subject him to presumptive mandatory removal and, subject to certain exceptions, permanent exclusion from the United States. *See* 8 U.S.C. §§ 1182(a)(2)(A)(i)(II), 1227(a)(2)(B)(i); *see also Padilla,* — U.S. at —, 130 S.Ct. at 1477 n. 1, 1483 (reaching same conclusion with respect to 8 U.S.C. § 1227(a)(2)(B)(i) and noting that under this subsection, "virtually every drug offense except for only the most insignificant marijuana offenses, is a deportable offense"). Thus, counsel had a duty to advise Kazadi correctly regarding these consequences.

■ Here, contrary to the district court's conclusion, the record does not show that Kazadi was so advised before pleading guilty to the misdemeanor count. Specifically, as noted above, the form Crim. P. 11 advisement that he was given only mentioned that a guilty plea to "certain felonies ... could *require* removal and permanent exclusion" from the United States. The form said nothing about misdemeanors and, thus, did not inform Kazadi that a conviction of the misdemeanor at issue would result in presumptive mandatory removal. Nor, apparently, did Kazadi receive any other advisement regarding immigration consequences either before or during the providency hearing. Accordingly, we do not agree that the advisement that Kazadi received precludes him, as a matter of law, from establishing prejudice. This is particularly true here, where Kazadi's alleged personal circumstances and lack of ties to the Congo support his assertion that he would not have pleaded guilty had he received the advice that he was constitutionally entitled to receive.

Accordingly, we conclude that the district court erred in summarily denying that portion of Kazadi's Crim. P. 35(c) motion collaterally attacking his misdemeanor conviction on ineffective assistance of counsel grounds and remand for a hearing on that claim.

### III. Deferred Judgment on Felony Conviction

We next consider whether Kazadi may collaterally attack his felony conviction. Because judgment did not enter on this count but was deferred, we asked the parties to provide supplemental briefing on the question of whether this aspect of Kazadi's motion was properly reviewable by the postconviction court under Crim. P. 35(c). We now conclude that under supreme court precedent interpreting Crim. P. 35(c), it was not.

As an initial matter, we note that we do not view the matter before us as raising a question as to whether we may review the postconviction court's ruling on Kazadi's Crim. P. 35(c) motion. We believe that we have jurisdiction to do so, because the postconviction court ruled on Kazadi's motion, and that ruling was final. Rather, the ques-

tion presented is whether the postconviction court could properly review Kazadi's collateral attack on his felony conviction under Crim. P. 35(c).

Crim. P. 35(c) provides "broad and inclusive postconviction remedies," but our supreme court has made clear that it does not provide an avenue for relief in all cases. *See Naranjo v. Johnson*, 770 P.2d 784, 787 (Colo. 1989). Under Crim. P. 35(c)(3), a defendant must claim a right either "to be released" or "to have a judgment of conviction set aside" on one of the grounds enumerated in Crim. P. 35(c)(2). *See also Naranjo*, 770 P.2d at 787.

■ When, as here, a defendant pleads guilty and judgment and sentencing are deferred, a conviction enters upon the court's acceptance of the guilty plea. § 16–7–206(3), C.R.S.2010. A judgment of conviction, however, does not enter until the court determines that the defendant has violated the conditions of the deferred judgment and sentence, in which case the trial court must enter judgment and impose a sentence. *Hafelfinger v. Dist. Court*, 674 P.2d 375, 378 (Colo.1984); *see also* Crim. P. 32(b)(3) (defining "judgment of conviction"). Thus, both our supreme court and divisions of this court have consistently concluded that a deferred judgment is not reviewable under Crim. P. 35 unless it is revoked and a judgment is entered. *See People v. Carbajal*, 198 P.3d 102, 105 (Colo.2008) ("A deferred judgment is not a final judgment, and thus may not be subject to either Crim. P. 35 review or direct appellate review until revoked."); *People in Interest of K.W.S.*, 192 P.3d 579, 581 (Colo. App.2008) ("[W]here a defendant pleads guilty pursuant to a deferred judgment and sentence agreement, 'Crim. P. 35 review is not available until a deferred judgment is revoked and a judgment of conviction entered.' ") (quoting *People v. Manzanares*, 85 P.3d 604, 611 (Colo.App.2003)); *People v. Anderson*, 703 P.2d 650, 652 (Colo.App.1985) ("Crim. P. 35 applies to postconviction remedies. Here, there has been no judgment of conviction and no sentence entered. Therefore, review under this rule is not available.").

Here the deferred judgment has not been revoked, judgment has not entered, and sentence has not been imposed. Consequently, Crim. P. 35(c) review of this aspect of Kazadi's motion was unavailable. Accordingly, we vacate that portion of the district court's order addressing the merits of Kazadi's challenge to his felony conviction. *See People v. Dist. Court,* 638 P.2d 65, 66–67 (Colo.1981) (voiding a district court's order granting a defendant's motion for Crim. P. 35(b) relief, where a prior order had been appealed, thereby depriving the postconviction court of jurisdiction); *People v. Shackelford,* 729 P.2d 1016, 1017–18 (Colo.App.1986) (affirming district court's denial of a defendant's Crim. P. 35(c) motion, where the motion was not ripe for adjudication).

In so holding, we are not persuaded by Kazadi's suggestion that we must necessarily treat the two counts together because were he to prevail, he would be entitled to vacate his entire plea agreement. We are aware that some jurisdictions allow withdrawal of multiple pleas when one of the pleas was not validly entered and the plea bargain was a "package deal" in which the agreements as to the individual charges were indivisible from one another. *See, e.g., In re Bradley,* 165 Wash.2d 934, 205 P.3d 123, 127 (2009). Our supreme court, however, has invalidated one plea but not the other in an alleged "plea package," when the basis for voiding one did not necessarily undermine the other. *See Waits v. People,* 724 P.2d 1329, 1337–38 (Colo.1986). Here, even if the felony count were properly before the postconviction court, that court would not have been required to treat the two counts as part of a plea package, because different arguments for ineffective assistance of counsel could apply to each count. Thus, the court could potentially void one of the convictions but not the other. *See id.*

Nor can we agree with Judge Taubman's view that Crim. P. 35(c)(2) authorized the postconviction court to review the felony count at this point. Although we agree that that rule entitles a person convicted of a crime to apply for postconviction review on the grounds set forth in the rule, it does not preclude any limitations on that right. Thus,

the right to pursue postconviction relief is subject to applicable statutes of limitation, *see* § 16–5–402, C.R.S.2010, and it requires the person convicted of a crime to be aggrieved and claiming a right either to be released or to have a judgment of conviction set aside, *see* Crim. P. 35(c)(3).

Notwithstanding the foregoing, we are sympathetic to Kazadi's apparent "catch–22," in which he may be subject to removal based on a deferred judgment that he may never have the opportunity to challenge in a Crim. P. 35(c) motion. *See generally* 8 U.S.C. §§ 1101(a)(48)(A)(i) (defining "conviction" to include guilty plea), 1227(a)(2)(B)(i) (alien convicted of violation of law relating to controlled substances is presumptively deportable). Nonetheless, we believe that our supreme court's interpretation of Crim. P. 35(c) dictates our result.

## IV. Conclusion

For these reasons, that portion of the district court's order relating to Kazadi's challenge to his felony conviction is vacated. That portion of the district court's order relating to Kazadi's challenge to his misdemeanor conviction is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge CARPARELLI concurs.

Judge TAUBMAN concurs in part and dissents in part.

Judge TAUBMAN concurring in part and dissenting in part.

I agree with that part of the majority's opinion concluding that defendant Yanick Kazadi may challenge his misdemeanor conviction. However, I part company with my colleagues regarding Kazadi's felony conviction because I conclude that, in the unique circumstances presented here, Kazadi may collaterally attack that deferred judgment and sentence.

I start with the proposition that section 13–4–102(1), C.R.S.2010, provides that, as relevant here, the court of appeals has jurisdiction over appeals from final judgments. The term "final judgment" has been defined

as one "which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding." *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1125 n. 2 (Colo.1982) (quoting *D.H. v. People*, 192 Colo. 542, 544, 561 P.2d 5, 6 (1977)). Further, Crim. P. 35(c)(3)(IX) expressly provides that an order denying postconviction relief is a final judgment reviewable on appeal. Thus, it is clear that Kazadi may properly appeal the denial of his Crim. P. 35(c) motion. However, the majority concludes that Kazadi could not properly seek relief under Crim. P. 35(c) to review his felony conviction for which he received a deferred judgment and sentence based on supreme court precedent. I disagree with the majority for three reasons. First, in my view, the decisions on which the majority relies are distinguishable.

Second, I conclude that a careful reading of Crim. P. 35(c) shows that that rule does not preclude a postconviction motion seeking to set aside a deferred judgment in the circumstances presented here.

Finally, I conclude that various cases from Colorado's appellate courts have interpreted the "final judgment" requirement of section 13–4–102(1) in a practical manner to afford appellate review, for justifiable reasons, in circumstances where there is not otherwise a final judgment, and that the reasoning of those cases applies here.

## I.  Cases Interpreting Deferred Judgment and Crim. P. 35(c) Are Distinguishable

As the majority correctly notes, the supreme court stated in *People v. Carbajal*, 198 P.3d 102, 105 (Colo.2008), "A deferred judgment is not a final judgment, and thus may not be subject to either Crim. P. 35 review or direct appellate review until revoked." In *Carbajal*, the defendant claimed the district court lacked jurisdiction to continue his deferred judgment beyond the statutory limits. In that case, the supreme court concluded that a deferred judgment is not a final judgment in the context of determining the defendant had no appellate remedy, and thus could pursue a proceeding under C.A.R. 21. How-ever, *Carbajal* is distinguishable because the supreme court did not address whether a defendant could file a postconviction motion in the unique circumstances presented here. Further, the three cases to similar effect cited by the majority are also distinguishable, because they addressed deferred judgments in different contexts. Significantly, neither *Carbajal* nor the court of appeals decisions analyzed the specific language of Crim. P. 35(c) and its statutory counterpart, section 18–1–410, C.R.S.2010.

The *Carbajal* court relied on *People in Interest of K.W.S.*, 192 P.3d 579, 581 (Colo. App.2008), to support its conclusion that Crim. P. 35 review is not available until a deferred judgment is revoked and a judgment of conviction is entered. However, the *K.W.S.* division did not address whether a deferred judgment could be challenged in a postconviction motion under the circumstances presented here; that case did not involve the defendant's immigration status.

The *K.W.S.* division, in turn, relied on two earlier decisions of court of appeals divisions. In *People v. Manzanares*, 85 P.3d 604, 611 (Colo.App.2003), the division held similarly that Crim. P. 35 review is not available until a deferred judgment is revoked and a judgment of conviction entered. In reaching this conclusion, the division relied on *People v. Anderson*, 703 P.2d 650, 652 (Colo.App.1985). The *Anderson* division stated that Crim. P. 35 review is not available for a deferred judgment and sentence. I am not persuaded by this statement, because the *Anderson* division only cited as support a civil case holding that the denial of summary judgment is an interlocutory, nonfinal decision. Further, *Anderson* did not address an immigration issue, like that presented here. Finally, I note that the *Manzanares* division concluded that the holding in *Anderson* was implied by Crim. P. 35(c) and section 18–1–410. This suggests, to me at least, that the *Manzanares* division was not necessarily persuaded that Crim. P. 35(c) and section 18–1–410 require the conclusion that a defendant could not file a postconviction challenge to a deferred judgment.

## II. Interpretation of Crim. P. 35(c) and Section 18-1-410

In my view, the words of section 18-1-410 and Crim. P. 35(c) support the conclusion that a defendant may file a motion for post-conviction relief seeking to set aside a deferred judgment.

First, section 18-1-410 does not expressly require a judgment of conviction as a prerequisite to filing an application for postconviction review. Rather, section 18-1-410(1) and (1)(f)(II) use the term "judgment of conviction" as both conditional and alternative phrases.[1]

Second, while the majority focuses on the "judgment of conviction" language in Crim. P. 35(c)(3), I conclude that different language in section 18-1-410(1) and Crim. P. 35(c)(2) supports my conclusion that a conviction, rather than a judgment of conviction, is necessary to file a postconviction motion.

Crim. P. 35(c)(2) provides in pertinent part:

> Notwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime *is entitled as a matter of right* to make application for postconviction review upon the grounds hereinafter set forth.

(Emphasis added.)

Section 18-1-410(1), quoted in footnote 1, contains almost identical language. Crim. P. 35(c)(2) provides that to justify a hearing, a defendant must allege in good faith that, among other reasons, the conviction was obtained in violation of the United States Constitution. Crim. P. 35(c)(2)(I).

Accordingly, the quoted language in both the statute and the rule provides that even when there is no direct appeal of a conviction or affirmance on appeal of a judgment of conviction, a defendant convicted of a crime is "entitled as a matter of right" to file a postconviction motion. This language does not require a judgment of conviction as a prerequisite to filing a Crim. P. 35(c) motion. *See* Crim. P. 32(b)(3) (defining judgment of conviction in criminal cases). As discussed below, it is clear that Kazadi was convicted of a crime. Accordingly, he had a right to file his postconviction motion, even though he was challenging a deferred judgment, rather than a judgment of conviction.

The majority, in turn, relies on different language in Crim. P. 35(c)(3) to support its conclusion that only a defendant who seeks to have a judgment of conviction set aside may file a postconviction motion. However, the language in that part of the rule is precatory: it provides that "[o]ne who is aggrieved and claiming either a right to be released or to have a judgment of conviction set aside ... *may* file" a postconviction motion "to correct a violation of his constitutional rights."

When examining a statute, we give effect to every word because we do not presume that the General Assembly used language idly and with no intent that meaning should be given to its language. *Lombard v. Colo. Outdoor Education Ctr., Inc.*, 187 P.3d 565, 571 (Colo.2008). "Shall" and "may" have distinct meanings. "Shall" indicates that a term is mandatory, while "may" connotes a grant of discretion or choice among alternatives. *See People v. Harrison*, 165 P.3d 859, 860 (Colo.App.2007).

We apply these rules of statutory construction to the interpretation of supreme court rules. *People v. Fuqua*, 764 P.2d 56, 58 (Colo.1988) (interpreting Crim. P. 35(b)).

Thus, the distinction in language between section 18-1-410(1) and Crim. P. 35(c)(2), on the one hand, and Crim. P. 35(c)(3), on the other, is significant. Like "shall," "is entitled

---

1. Section 18-1-410(1) provides in pertinent part: "Notwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed on appeal, every person convicted of a crime is entitled as a matter of right to make applications for postconviction review."

Similarly, § 18-1-410(1)(f)(II) provides: "The ground set forth in this paragraph (f) [significant change in the law] may not be asserted if, prior to filing for relief pursuant to this paragraph (f), a person has not sought appeal of a conviction within the time prescribed therefor or if a judgment of conviction has been affirmed upon appeal."

as a matter of right" indicates that the language is mandatory. Thus, a defendant meeting the requirements of section 18-1-410(1) and Crim. P. 35(c)(2) is authorized to file a motion for postconviction relief, even if the motion seeks to set aside a deferred judgment. This conclusion is consistent with the supreme court's observation that Crim. P. 35(c) "provides broad and inclusive postconviction remedies." *Naranjo v. Johnson*, 770 P.2d 784, 787 (Colo.1989).

Significantly, the different language in subsections (2) and (3) is not necessarily inconsistent. One who meets the requirements of subsection (2) can file a Crim. P. 35(c) motion as a matter of right, while one meeting the requirements of subsection (3) has the discretion to file a postconviction motion.

Even if I were to assume that the language in these subsections is inconsistent, the overarching purpose of Crim. P. 35(c) to provide broad and inclusive remedies should govern our interpretation of the rule. Otherwise, as discussed below, Kazadi will be left without a remedy to challenge his conviction and deferred judgment.

Accordingly, I conclude that neither section 18-1-410 nor Crim. P. 35(c) requires that a judgment of conviction enter before a defendant may file a Crim. P. 35(c) motion to challenge a conviction and deferred judgment.

### III. Determination of Final Judgment Here

The question then becomes whether Kazadi may seek postconviction relief under the circumstances presented here, even if my above analysis of section 18-1-410(1) and Crim. P. 35(c) is incorrect. I conclude, for two reasons, that under the unique circumstance presented here, Kazadi's conviction and deferred judgment should be considered a judgment of conviction permitting him to file a Crim. P. 35 motion.

First, his guilty plea resulting in the deferred judgment is considered a conviction under Colorado law. *See* § 16-7-206(3), C.R.S.2010; *see also Hafelfinger v. Dist. Court for Eighth Jud. Dist.*, 674 P.2d 375, 377 (Colo.1984) ("For purposes of determin-

ing the likelihood that the accused will be present at trial, a plea of guilty upon which a deferred sentence is granted has the same relevance during the period of deferment as a jury verdict and judgment of conviction.").

Also, as the majority notes, under federal immigration law, 8 U.S.C. § 1101(a)(48)(A)(i), a conviction includes a guilty plea resulting in a deferred judgment.

Second, just as the term "conviction" may be interpreted differently depending on the statute or rule in which it is used and the issue in a particular case, *see Hafelfinger*, 674 P.2d at 376, so too can the term "judgment of conviction" be susceptible of differing interpretations. In this regard, it is helpful to note that while the *Harding Glass* final judgment rule is often quoted, our appellate courts have created numerous exceptions to afford an avenue of appeal.

A few examples illustrate my point. In the following cases, our appellate courts have determined that certain nonfinal orders are appealable: *Feigin v. Alexa Grp., Ltd.*, 19 P.3d 23 (Colo.2001) (orders denying intervention as of right are appealable orders); *Gallagher v. Board of Trs.*, 54 P.3d 386 (Colo. 2002) (orders deciding issue of qualified immunity immediately appealable); *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402 (Colo.App.2004) (orders denying motion to dismiss, based on tribal sovereign immunity grounds, are, like orders denying governmental and qualified immunity, immediately appealable); *Securities Investor Protection Corp. v. First Entmt. Holding Corp.*, 36 P.3d 175 (Colo.App.2001) (an order deciding issue of contempt and sanctions is a final order); *In re Marriage of Westlake*, 674 P.2d 1386 (Colo.App.1983) (order for temporary maintenance in a dissolution proceeding immediately appealable).

Additionally, in *Furlong v. Gardner*, 956 P.2d 545 (Colo.1998), the supreme court held that an order denying qualified immunity is appealable based on case law interpreting 42 U.S.C. § 1983. In *Furlong*, the supreme court also held that an unsigned minute order, otherwise not final and appealable pursuant to C.R.C.P. 58(a), was sufficient to constitute a final judgment because of the need to vindicate federal law.

Further, in dependency and neglect cases, an adjudication of dependency and neglect is final once a dispositional order has been entered, even though that order does not end the dependency and neglect proceeding. *See People in Interest of E.A.*, 638 P.2d 278 (Colo.1981). Also, although an order dismissing a complaint without prejudice is generally not appealable because it is not final, *see Burden v. Greeven*, 953 P.2d 205 (Colo. App.1998), such an order is considered to be final if the dismissal would prevent refiling of the complaint because the statute of limitations has run. *See B.C. Inv. Co. v. Throm*, 650 P.2d 1333 (Colo.App.1982).

The thrust of these cases, then, is that while a final judgment is generally defined to be a decision that "ends the particular action in which it is entered," *Harding Glass*, 640 P.2d at 1125 n. 2, and leaves nothing further to be done, numerous exceptions have evolved over the years to accommodate specific circumstances. *See Colorado Appellate Handbook* § 5.2 (Hon. Janice B. Davidson ed., 3d ed. supp. 2010) (orders that appear temporary in nature may nevertheless be appealable).

Accordingly, if Crim. P. 35(c) requires a judgment of conviction, I believe that term can be interpreted to apply to the circumstances presented here.

### IV. A Final Judgment Exists Here

Based upon the above review of statutory and case law, I conclude that Kazadi may seek relief under a Crim. P. 35(c) motion to review his felony conviction and deferred judgment. Here, Kazadi seeks to set aside a conviction resulting from a deferred judgment, based on his allegation that he received ineffective assistance of counsel because his trial attorney did not advise him about the immigration consequences of his plea. *See Padilla v. Kentucky*, — U.S. —, —, 130 S.Ct. 1473, 1478, 176 L.Ed.2d 284 (2010); *People v. Pozo*, 746 P.2d 523, 525–26 (Colo.1987). Under the rule espoused in the cases noted above regarding deferred judgments, Kazadi would not have any opportunity to challenge his deferred judgment. Instead, he would be required to wait until the deferred judgment is revoked and a judg-ment of conviction entered. However, that revocation would only result from Kazadi's further legal violations, which would make his deportation or removal from the United States more likely in any event. In the alternative, if Kazadi were to wait until the period of deferred judgment was completed, he would no longer have a judgment on his record; however, for purposes of federal immigration law he would still be considered to have suffered a conviction that could result in his removal from the country.

Under these circumstances, neither statutes nor case law requires that Kazadi be left in a "catch–22" situation in which he is unable to seek to set aside his guilty plea resulting in the deferred judgment. To conclude otherwise would prevent Kazadi from vindicating his constitutional right to effective assistance of counsel as to immigration issues enunciated twenty-four years ago by our supreme court in *Pozo*, and echoed last year by the United States Supreme Court in *Padilla*.

From Kazadi's perspective, his deferred judgment here was a final judgment which ended his legal proceedings regarding the felony charge against him. If our law precludes challenge to a deferred judgment under the circumstances presented here, similarly situated criminal defendants would decline to enter into deferred judgments, thereby defeating the salutary purposes they serve. Instead, they might enter into more onerous plea agreements, requiring them to plead guilty to particular offenses, or they might opt to proceed to trial. In the former situation, the consequences are more severe than deferred judgments, while in the latter situation the judicial system would be burdened by additional trials when a plea bargain would otherwise be a viable option.

Accordingly, I would apply the majority's analysis as to Kazadi's misdemeanor conviction to his felony deferred judgment as well and conclude that he has sufficiently alleged ineffective assistance of counsel to warrant a hearing on both. Even though the majority relies in part on the fact that Kazadi's Crim. P. 11 advisement form only referred to possible removal from the United States regard-

ing certain felonies and did not address misdemeanors, the remainder of the majority's analysis supports the conclusion that Kazadi has sufficiently alleged that his Crim. P. 11 written advisement, together with the lack of any oral advisements regarding immigration consequences provided by the trial court during the providency hearing, warrants an evidentiary hearing on his claim of ineffective assistance of counsel.

Accordingly, I would reverse and remand for a hearing on Kazadi's claim as to both the felony and the misdemeanor.