23CA2027 Peo v Dijulio 04-17-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 23CA2027
Mesa County District Court No. 22CR193
Honorable Matthew D. Barret, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

John Edward Dijulio,

Defendant-Appellant.

_____

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SCHUTZ
Welling and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

_____

Philip J. Weiser, Attorney General, Jenna Baker, Assistant Attorney General
Fellow, Denver, Colorado, for Plaintiff-Appellee

Joseph Chase, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

¶ 1     This appeal arises from a jury trial and resulting verdict finding John Edward Dijulio guilty of first degree assault on a peace officer. Dijulio appeals the conviction, challenging the sufficiency of the evidence. We affirm.

## I.     Background

¶ 2     Colorado State Patrol Trooper Samuel Goure pulled over a car that was being driven without its headlights illuminated. Dijulio was a passenger in that car. While identifying Dijulio, Goure learned that he had two outstanding arrest warrants. Goure asked Dijulio to step out of the car. Dijulio carried a knife clipped to his front pants pocket, which Goure saw. Dijulio allowed him to remove it.

¶ 3     Dijulio became uncooperative when Goure tried to arrest him on the warrants, repeatedly stating that he was "not going to jail" and was "not cooperating" with Goure. When Goure tried to grab him, Dijulio produced a handgun from his jacket and pointed it at Goure. After telling Dijulio to drop the gun twice — commands that Dijulio did not abide — Goure fired his gun at Dijulio three times, missing him. Dijulio did not return fire, but kept his gun pointed toward Goure while yelling "just let me be" and "just let me go."

Goure took cover behind the car and, after a brief standoff, Dijulio fled the scene.

¶ 4     Shortly after fleeing, Dijulio entered a nearby house. Two adults and a young child were there; the child's mother was awake, and the father was asleep. When the mother confronted Dijulio, he told her not to be alarmed and that he had just been shot at by the police. She noticed that he had a gun and woke father, who grabbed Dijulio's arm and held it behind his back as he walked him out of the house. They called the police after Dijulio left.

¶ 5     Officers eventually found Dijulio sitting on a bench near the house he'd entered, with the handgun placed on the bench next to him. Roughly twenty officers surrounded Dijulio and gave him several verbal commands to get on the ground. Dijulio verbally responded to some of the commands but did not comply. Eventually, officers released a service canine, which bit Dijulio's leg, and the officer then deployed a taser on him. Officers recovered Dijulio's gun, noting that the clip was full and a round was chambered.

¶ 6        Dijulio was charged with five counts, including first degree assault of a peace officer.  After a trial, the jury found him guilty of the first degree assault charge and other charges.[1]

## II.    Analysis

¶ 7        Dijulio argues that the prosecution did not introduce sufficient evidence to prove he had the specific intent that is necessary to establish first degree assault.  We disagree.

### A.    Standard of Review

¶ 8        Appellate courts review sufficiency claims de novo.  *McCoy v. People*, 2019 CO 44, ¶ 34.  "We consider 'whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.'"  *Id.* at ¶ 63 (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)).  Any inferences must be drawn only on established facts.  *McBride v. People*, 2022 CO 30, ¶ 38.  Those inferences must be supported by a "logical and convincing connection between the facts

---

[1] Dijulio challenges only his conviction for first degree assault.

established and the conclusion inferred." *People v. Perez*, 2016 CO 12, ¶ 25 (quoting *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983)).

¶ 9    Determining a witness's credibility and resolving conflicting evidence are matters entrusted to the jury. *See People v. McIntier*, 134 P.3d 467, 471 (Colo. App. 2005) ("When the sufficiency of the evidence is challenged on appeal, the reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt."). Thus, a reviewing court "should not attempt to 'serve as a thirteenth juror or invade the province of the jury.'" *Perez*, ¶ 25 (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)).

¶ 10    Assault in the first degree of a peace officer requires proof beyond a reasonable doubt that a defendant threatened a peace officer with a deadly weapon "[w]ith intent to cause serious bodily injury." § 18-3-202(1)(e), C.R.S. 2024. To prove the requisite intent, the prosecution must show a defendant's "conscious objective [was] to cause the specific result proscribed by the statute

defining the offense." § 18-1-501(5), C.R.S. 2024. "It is immaterial to the issue of specific intent whether or not the result actually occurred." *Id.* "[S]pecific intent must be established beyond a reasonable doubt, [and] it may be proven by circumstantial evidence." *People v. Walker*, 542 P.2d 1283, 1285 (Colo. 1975).

### B.    Applicable Law

¶ 11    Numerous Colorado cases have upheld a first degree assault conviction or similar charges based on the defendant's specific intent as revealed by his words and actions and the totality of the circumstances. *See, e.g.*, *People v. Black*, 523 P.2d 1402 (Colo. 1974); *Walker*, 542 P.2d 1283; *People v. Prante*, 493 P.2d 1083 (Colo. 1972).

¶ 12    In *Black*, two officers confronted the defendant in the basement of a church he had just broken into. 523 P.2d at 1403. One of the officers saw that he had a gun, attempted to reach for it, and alerted the other officer that the defendant had a gun. *Id.* The defendant then stated, "Yes, I've got a gun and I'm goin' to kill me a . . . cop." *Id.* The gun discharged during the ensuing struggle — striking the defendant's leg — although it was unclear who fired it. *Id.* The jury convicted the defendant of assault with intent to

commit murder. On appeal, the supreme court concluded these facts provided sufficient evidence to establish the defendant's specific intent to commit assault against a peace officer. *Id.*

¶ 13    In *Walker*, the defendant was confronted by a rival, and during the resulting confrontation he pulled a gun and fired it four times, hitting the rival once in the leg. 542 P.2d at 1285. The rival fled and fell to the ground at the entryway of a restaurant. *Id.* The defendant approached the rival and frisked him for a gun. *Id.*

¶ 14    Three undercover officers were in the restaurant, heard the gunfire, and saw the defendant standing over the rival. *Id.* As the officers approached, the defendant pointed his gun at them. *Id.* One of the officers shot the defendant, who was subsequently charged with assault of a peace officer with a deadly weapon. *Id.* The jury returned a guilty verdict. *Id.*

¶ 15    On appeal, the defendant challenged the sufficiency of the evidence. *Id.* The supreme court reasoned that it did not matter that the defendant had not made a specific threat to the officers. Rather, the court held that the jury could reasonably infer his specific intent because he pointed a gun at the officers, who were standing about seven feet away, and one of the officers identified

himself as an officer and ordered the defendant to drop the gun, which he did not do. *Id.*

¶ 16    In contrast, in *People in Interest of D.G.P.*, 570 P.2d 1293 (Colo. 1977), a police officer woke a sleeping minor who had a gun tucked in his waistband. As the juvenile awoke, both reached for the gun, and the officer secured it. *Id.* at 1296. During the struggle, the juvenile hit the back of the officer's hand. The juvenile made no statements threatening the officer and did not have possession of the gun during the confrontation. *Id.* The juvenile was adjudicated. *Id.* The supreme court vacated the conviction, concluding that even viewed in the light most favorable to the prosecution, the evidence was insufficient to support a conviction for first degree assault. *Id.*

¶ 17    The People point to *Prante.* There, the defendant was hiding from police in a closet. When the police opened the closet door, Prante emerged with a loaded gun in his hand that "was leveled to some degree." *Prante*, 493 P.2d at 1084. Prante refused to comply with the officer's demand that he drop the gun, and the officer then forcibly took it from him. *Id.* Based on these facts, the supreme

court rejected Prante's challenge to the sufficiency of the evidence and affirmed his conviction. *Id.* at 1084-85.

## C.    Discussion

¶ 18     Dijulio argues that his acts and omissions, viewed in the context of the surrounding circumstances, demonstrate that he had no intent to harm Goure, and therefore there was insufficient evidence for the jury to convict him of first degree assault. We disagree.

¶ 19     Dijulio points to *Black,* noting that the defendant there not only pulled a gun, but also expressly stated that he was going "to kill me a . . . cop." 523 P.2d at 1403. In contrast, Dijulio notes that he never threatened to kill Goure, and to the contrary, his express statements suggested that killing Goure was neither his intent nor his objective. Instead, he argues, his intent was simply to avoid arrest.

¶ 20     Next Dijulio points to *Walker,* noting that the conviction there was upheld, in part, because prior to confronting the officers, the defendant had discharged his gun four times, shooting his rival in the leg. Even though the defendant never verbally threatened the officers or shot at them, Dijulio reasons that the defendant's intent

to use the weapon to harm the officers could be inferred because he had just shot his rival before pointing the gun at the officers. In contrast, Dijulio notes that he never discharged his gun, whether at Goure or anyone else.

¶ 21 Thus, Dijulio argues *D.G.P.* is controlling. Like the juvenile there, Dijulio notes that he did not verbally threaten to shoot Goure, and did not shoot at him. Beyond his direct interactions with Goure, Dijulio also points to his interactions with the family whose house he broke into. Instead of pulling his gun on any of the occupants, Dijulio attempted to assure them that he did not intend any harm. And after leaving their house, Dijulio notes that he proceeded to sit on a bench, where, despite the gun being by his side, he never pointed it at officers or the canine that bit him, and he did not threaten to shoot them.

¶ 22 Based on the totality of these circumstances, Dijulio argues there was a lack of sufficient evidence for the jury to conclude that he had the specific intent to harm Goure.

¶ 23 Initially, we reject any suggestion that the circumstances present in *Black* or *Walker* reflect conditions that are necessary to sustain a first degree assault conviction. Rather, these

9

circumstances were sufficient conditions. In *Black*, the fact that the defendant expressly stated that he was going to kill the officer and his effort to pull his gun were sufficient conditions to support a conclusion that he had the specific intent to harm the officer. So too, in *Walker*, the defendant's prior discharge of his gun and subsequently pointing his gun at the officers were sufficient conditions to support the conclusion that he had the specific intent to harm the officers.

¶ 24    But it does not follow that a prior discharge of the firearm or an express verbal threat to kill an officer are *necessary* conditions to establish the specific intent required to support a conviction for assault in the first degree. Rather, as Dijulio seems to concede, the existence of such intent must be based on the totality of the circumstances present in a given case. *See People v. Thompson*, 121 P.3d 273, 278-79 (Colo. App. 2005) (if there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element, and where reasonable minds could differ, the evidence is sufficient to sustain a conviction).

¶ 25    Dijulio argues that the totality of the circumstances demonstrates that he had no intention to cause Goure serious bodily injury.  Nevertheless, he concedes that pointing the gun at Goure and telling him that he was "not going to jail" could provide sufficient evidence for the jury's conclusion that he intended to cause Goure serious bodily harm.  But Dijulio argues that his conduct after pulling the gun — not shooting at Goure, not deploying his gun against the family whose house he broke into, and not shooting at the police who surrounded him as he sat on the bench — demonstrates that his only goal was to avoid arrest, not to hurt Goure.

¶ 26    But Dijulio's urged conclusion would require us to view the evidence presented at trial through the wrong procedural lens.  In advancing his argument, Dijulio emphasizes the facts revealed at trial that are most favorable to him, and which — viewed in isolation — could support an acquittal on the first degree assault charge.  But on appeal, we are not permitted to consider the appropriateness of the jury's verdict by viewing the evidence in the light most favorable to the defendant and drawing inferences in his favor.  To the contrary, in the procedural context of a sufficiency

11

challenge, we must view the evidence in the light most favorable to the prosecution and draw all reasonable inferences in the prosecution's favor. *McCoy*, ¶ 34; *McIntier*, 134 P.3d at 471. When viewed through this prism, the evidence presents a significantly different picture than Dijulio portrays.

¶ 27 From the start, the evidence indicates that Dijulio refused to cooperate when Goure attempted to arrest him. Dijulio then pulled a fully loaded gun and pointed it directly at Goure, telling him that he was "not going to jail." Even when Goure pulled his service revolver and ordered Dijulio to drop the gun, Dijulio refused and continued to resist arrest, telling Goure to "just let [him] go" as he continued to level his gun at him. Even after Goure shot at him, Dijulio refused to drop the gun.

¶ 28 After fleeing, Dijulio broke into the home of strangers, armed with a gun. While the fact that he did not use his gun could support the conclusion that he meant the occupants no harm, the fact the he broke into their house also reflects a significant measure of desperation while attempting to avoid apprehension at all costs.

¶ 29 Similarly, the fact that Dijulio did not attempt to shoot the officers or the canine that bit him could be viewed as an absence of

intent to harm anyone, including Goure. But it could also be reasonably interpreted as a reflection of Dijulio's desperate mental state and his willingness to do anything to avoid arrest.

¶ 30 These facts, viewed in the light most favorable to the prosecution, could lead a reasonable jury to conclude that Dijulio had the specific intent to harm Goure when he pulled the gun on him and said that he wasn't going to jail. A reasonable juror could conclude that the first degree assault was committed at this point in time, regardless of what happened thereafter. *See People v. Trujillo*, 543 P.2d 523, 524 (Colo. 1975) ("The totality of the facts and circumstances surrounding the shooting clearly justify strong inferences which could be drawn by the jury that the defendant had the specific intent to injure [the victim] with his gun.").

¶ 31 Like the defendant in *Walker*, Dijulio pulled a gun on an officer who stood less than ten feet from him, aimed the gun at him, and repeatedly failed to comply with demands that he drop the gun. And like the defendant in *Prante*, he pointed a loaded gun at an officer while resisting arrest. And these same facts distinguish *D.G.P.*, where the juvenile did not aim his gun at the officer or verbally threaten to shoot him.

13

¶ 32    Perhaps, viewing the evidence through the lens Dijulio urges, a reasonable juror could have acquitted him of first degree assault. But this jury heard the evidence and found Dijulio guilty. Viewing that evidence in the light most favorable to the prosecution and drawing all reasonable inferences in its favor, we cannot conclude there was insufficient evidence to support the verdict.

### III.   Disposition

¶ 33    The judgment of conviction is affirmed.

JUDGE WELLING and JUDGE KUHN concur.